The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

William Merlin RÁWSON,
Defendant–Appellant.

No. 02CA0527.

Colorado Court of Appeals,
Div. IV.

March 25, 2004.

As Modified on Denial of Rehearing
May 6, 2004.

Certiorari Granted Aug. 16, 2004.

Ken Salazar, Attorney General, Jennifer M. Smith, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Mark G. Walta, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge GRAHAM.

Defendant, William Merlin Rawson, appeals the judgment of conviction entered on a jury verdict finding him guilty of two counts of second degree assault on a peace officer. Defendant also appeals his sentence. We reverse and remand for a new trial.

Defendant was charged with two counts of second degree assault on a peace officer. He secured a $10,000 bond for his release and retained private counsel. Counsel later withdrew, and the case proceeded to trial, where defendant represented himself. Upon conviction on both counts, the court sentenced defendant to the Department of Corrections (DOC) for two five-year sentences to be served consecutively.

## I.

Defendant contends that the trial court erred by not advising him of his right to counsel under the Sixth Amendment and Colo. Const. art. II, § 16 and therefore his purported waiver of this right was invalid. We agree.

The fundamental right to counsel is guaranteed by the Sixth Amendment to the United States Constitution and is considered essential to a fair trial. *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *People v. Arguello*, 772 P.2d 87 (Colo.1989). The Sixth Amendment right to counsel includes both the right to court-appointed counsel for an indigent and the right to a retained attorney for a defendant who is financially able to pay for legal representation. *King v. People*, 728 P.2d 1264 (Colo. 1986).

As a corollary to the Sixth Amendment right to counsel, a defendant has the alternative right to self-representation. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The Colorado Constitution reinforces this right, stating that "the accused shall have the right to appear and defend in person." Colo. Const. art. II, § 16; *People v. Arguello, supra.*

A defendant's right to self-representation is conditioned on the requirement that the defendant "*has an intelligent understanding* of the consequences of so doing." *People v. Moody*, 630 P.2d 74, 77 (Colo.1981)(quoting *Martinez v. People*, 172 Colo. 82, 85, 470 P.2d 26, 28 (1970)). Thus,

before a defendant is allowed to proceed pro se, the defendant first must waive the right to counsel. *Faretta v. California, supra; People v. Arguello, supra.*

A trial court's determination that a defendant waived the constitutional right to counsel will be upheld if the record affirmatively establishes that the defendant knowingly and intelligently waived that right. *People v. Arguello, supra.*

In assessing the validity of a waiver, courts must indulge every reasonable presumption against finding a waiver of the fundamental right to counsel. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *People v. Arguello, supra.* Where the record is silent regarding the issue of waiver, no presumption can arise. *Carnley v. Cochran,* 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); *People v. Arguello, supra.* Any doubts regarding the waiver must be resolved in the defendant's favor. *People v. Arguello, supra.*

"[A]n explicit statement of waiver is not invariably necessary to support a finding that the defendant waived ... the right to counsel"; in some cases waiver may be inferred from the actions and words of the defendant. *North Carolina v. Butler,* 441 U.S. 369, 375–76, 99 S.Ct. 1755, 1759, 60 L.Ed.2d 286 (1979).

An implied waiver of counsel resulting from a defendant's misconduct is more accurately described as a forfeiture of the right rather than a deliberate and informed decision to waive the right. *People v. Arguello, supra.* However, most courts use the terminology of "implied waiver" and apply the legal standards for a waiver in determining whether a defendant's disruptive or uncooperative behavior resulted in a loss of the right to counsel. *People v. Arguello, supra; see also Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970)(defendant's disruptive and stubbornly defiant conduct resulted in the loss of his right to be present at his own trial, after he was adequately warned of the consequences of his conduct by the trial judge); *Thomas v. Wainwright,* 767 F.2d 738 (11th Cir.1985)(at some point, a defendant may waive his right to counsel by his unreasonable refusal to communicate with his court-appointed attorney); *People v. Moody, supra* (the defendant lost the right to represent himself by his adamant and unreasonable demand for new jury panel); *People v. Litsey,* 192 Colo. 19, 555 P.2d 974 (1976)(the defendant's failure to make any effort to retain counsel after discharging his retained attorney, and his lack of desire for legal representation, constituted waiver of the right to counsel).

In *King v. People, supra,* the supreme court articulated the following test for an implied waiver of counsel:

> In order for a court to conclude that an accused has impliedly waived counsel, the record as a whole, including the reasons proffered by the defendant for not having counsel, must show that the defendant knowingly and willingly undertook a course of conduct that evinces an unequivocal intent to relinquish or abandon his right to legal representation.

*King v. People, supra,* 728 P.2d at 1269.

The defendant in *King* had failed to secure retained or appointed counsel before trial despite the trial court's repeated warnings that the trial date would not be continued. The trial court forced the defendant to trial pro se without a careful inquiry into the defendant's understanding of his right to counsel. The supreme court held that this procedure was reversible error because, without an adequate advisement from the trial court, the defendant's conduct could not amount to an implied waiver of his right to counsel.

Even if the choice to proceed pro se is "voluntary," the waiver is not valid until the court ensures that the waiver is made knowingly and intelligently. *People v. Arguello, supra.* A waiver cannot be knowing and intelligent unless the record clearly establishes that the defendant understands the nature of the charges, the statutory offenses included within them, the range of allowable punishments, possible defenses to the charges and circumstances in mitigation, all the facts essential to a broad understanding of the whole matter, and the requirement of complying with the rules of procedure at

trial. *People v. Stanley*, 56 P.3d 1241, 1244 (Colo.App.2002).

■ The trial court has the responsibility of ensuring the validity of a waiver by properly advising the accused. The court must confirm that the accused is making a knowing and informed decision to forgo "many of the traditional benefits associated with the right to counsel." *Faretta v. California, supra,* 422 U.S. at 835, 95 S.Ct. at 2541; *see also People v. Lucero,* 200 Colo. 335, 340, 615 P.2d 660, 663 (1980).

> The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake— is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.

*Johnson v. Zerbst, supra,* 304 U.S. at 465, 58 S.Ct. at 1023. "To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand." *Von Moltke v. Gillies,* 332 U.S. 708, 723–24, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948). The trial court's responsibility then is to ensure that a defendant is "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta v. California, supra,* 422 U.S. at 835, 95 S.Ct. at 2541 (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)).

The *Colorado Trial Judge's Benchbook* lists suggested questions that a trial court should ask every defendant who seeks to proceed pro se, including whether: the defendant understands the right to counsel; the defendant understands that if he or she cannot afford an attorney, one will be appointed; the defendant understands the charges and possible penalties; the defendant has any legal training; the defendant is educated; the defendant is under the influence of any drug, medication, or alcohol that would affect his or her understanding; the defendant wishes to consult with the public defender before making a decision to waive counsel; the defendant understands the complexity of criminal law; the defendant understands the right to remain silent; the defendant requests advisory counsel; the defendant understands the risks involved in self-representation; the defendant understands his or her rights of confrontation and cross-examination; and the defendant understands that he or she has the right to compel witnesses to appear and testify. *People v. Arguello, supra; People v. Stanley, supra.* A court's failure to make these inquiries does not automatically render the waiver invalid, but is an exception that should rarely be invoked. *People v. Arguello, supra.*

■ Whether a waiver of the right to counsel is knowing and intelligent presents a mixed question of law and fact that we review de novo. *United States v. Cash,* 47 F.3d 1083 (11th Cir.1995); *People v. Stanley, supra.* On appeal, the reviewing court must not only look at the advisement, but also weigh the totality of the circumstances in ascertaining the validity of the waiver. *People v. Arguello, supra.*

### A.

Initially, we consider whether the trial court adequately ascertained that defendant knowingly, intelligently, and voluntarily decided to represent himself. We conclude that it did not.

Here, the record reflects that defendant requested that his attorney withdraw in May 2001. Defense counsel expressed concern about defendant's competency to represent himself and requested a competency examination before defendant proceeded pro se. The trial court ordered defendant to undergo a mental health examination.

After defendant was deemed competent to proceed, the trial court granted defense counsel's motion to withdraw and gave defendant thirty days to obtain a new lawyer. A month later, defendant told the court that he was representing himself, and the court responded, "okay." Defendant inquired about pretrial procedures and discovery and then

informed the court that he was "still not sure what the charges [were]." The court advised him of the charges and potential penalties. When defendant continued to express confusion over the charges and the procedures to obtain evidence, the court stated, "[T]hat's what attorneys are for, and I can't represent you. I'll do my best to answer your questions, but I can't give you legal advice in your case.... You need to investigate your case and look at the evidence against you ... you have to try and figure that out yourself, I guess."

Defendant agreed to waive his right to a speedy trial because he wanted more time "to continue looking for a lawyer." After informing defendant of the relevant deadlines for pretrial motions, witness lists, and exhibit lists, the court told defendant, "You're in a lot of jeopardy.... I urge you strongly to try to find a lawyer who can help you out with these charges."

The prosecution then informed the court of defendant's refusal to take his psychotropic medications and suggested that defendant might have violated the bond conditions. In attempting to resolve this matter, defendant indicated that he wanted to discuss the matter with a lawyer, if he could "afford [an] attorney."

Defendant later returned to court and presented a letter from the mental health center documenting his participation in treatment, but advising that defendant had not been taking his medications. Defendant then stated that he had not "been able to track down a lawyer": "There's so few of them in the area, in the Montrose area. I've been talking to several in the Mesa County area." The court ordered defendant to return in a few weeks with a letter demonstrating that he was complying fully with the mental health treatment program.

In September 2001, defendant returned to the court again without counsel and gave the court a letter confirming his compliance with his bond's mental health treatment conditions. Defendant requested an extension for filing pretrial motions, noting that he was "still trying to hire a lawyer," and the trial court granted him a three-week extension.

At the pretrial conference in November 2001, defendant appeared without counsel, which prompted the following discussion:

THE COURT: [Defendant], you still intend to proceed as your own lawyer?

DEFENDANT: Well, I've been trying to hire a lawyer and I've got a lawyer that wants to take the case but I need to come up with $25,000 and its going to take me some time to do so. I don't know if I'll be able to do that or not, it depends on my dad. And it's probably going to take a month to find out for sure, he'd probably have to refinance his home. If I can't do that, I've talked to so many lawyers, I guess I'd just have to go do it on my own if I couldn't get some more time to get the $24,000 [sic] to hire this lawyer.

THE COURT: What are you asking me to do?

DEFENDANT: If I can get a couple, two or three weeks and try and find out for certain whether I'm going to be able to get the money or not, and if not, then I'd just, I guess, go ahead and represent myself. But if I can, I'd really like to have a lawyer on this case.

THE COURT: I think that would be very important, given the situation here. I'm not inclined to vacate the trial at this point.

The prosecution expressed concern that the appearance of new counsel would delay the trial, and the court responded:

Well, I'm going to give you [defendant] till next Thursday to let me know about this.... I strongly advise you talk to [the prosecutor] about some of the procedural things that go on in a trial. If you're representing yourself, you need to know— I'm going to expect you and he to work on what's known as a statement of the case, which is ... something I would read to the jury before jury selection to tell them what the allegations are by the people, what the defenses are by the defendant, give them a general idea what the case is about.

The court told defendant to let the court know then whether he was proceeding pro se, warning him that "whatever it is you're doing to try to get a lawyer, you need to put that in high gear." At the conclusion of the

hearing, the trial court reiterated to defendant, "[T]hese are very, very serious charges involving mandatory penitentiary time. If you're going to get a lawyer, you need to figure that out."

About a week later, defendant returned to the court, and the following dialogue transpired:

THE COURT: Now, [defendant], have you got a lawyer?

DEFENDANT: Well, I can't afford the only lawyer I'm able to track down. The only thing I could do, I realize that it's been going on some time and if I'm not allowed more time to try and track down a lawyer, then I'll do my best to represent myself, but if the state would give me more time, I'd appreciate that, but I understand the situation.

The court did not specifically respond to defendant's request, but briefly explained what would happen at the pretrial conference. Defendant then asked, "[W]hat all is jury instructions going to entail, do you know?" The court, after explaining what jury instructions are, again urged defendant to "get legal representation, these are terribly serious charges." Defendant responded,

I've tried to. I've talked to a lot of lawyers. A lot [of] lawyers don't want to take cases where it's against the police, and plus I live in Grand Junction, a lot don't want to travel this far. But I'll try to get one, but I don't know if I'll be able.

The trial court did not respond.

When defendant appeared without counsel at another pretrial hearing, the following conversation occurred:

THE COURT: [Defendant], you don't have a lawyer?

DEFENDANT: No, I don't, Your Honor.

THE COURT: Are you ready to go to trial?

DEFENDANT: I guess so, guess I gotta be.

Without any further inquiry, the trial court discussed several pretrial matters and explained how the trial would proceed and what defendant needed to do to prepare himself. The court assisted defendant with his state-

ment of the case. When defendant inquired about submitting evidence of medical records, the trial court stated, "Here's the problem. Again, a lawyer would be able to help you with this. Records sometimes are hearsay evidence and you might need an actual witness to testify to your injuries." The court then explained that defendant could talk to the clerk to find out how to subpoena his treating physicians. When the court informed defendant that he had to disclose the witnesses he would call at trial, defendant responded, "Yeah, I've been trying to get a lawyer but I haven't been able to."

During voir dire, defendant expressed his desire for, but inability to secure, legal representation:

Well, I'm not a lawyer and this is the first trouble I've had with the law, and I've never had any dealings with the court, and I am representing myself. It's something I didn't want to do, there were some circumstances in the case. I did hire a lawyer in the beginning and ended up having to get rid of that lawyer and ... couldn't hire another one before this court date, so I kind of got stuck representing myself over the last 10 days, so I've been trying to do whatever I can to defend myself in this situation.

The case proceeded to trial, and defendant was convicted.

At the presentencing hearing, defendant stated that he had "no idea what [he was] facing here, what possible—what minimum is, what maximum." Defendant seemed surprised when the prosecutor informed him that the minimum sentence he would receive was ten years in the DOC: "For what happened? I was defending myself. I realize that—and I have no prior record and ... I don't break the law."

Before imposing the sentence, the trial court stated:

I have been troubled, I asked for your competency evaluation at least once in this case. I have felt that you did not clearly understand the situation. I've felt that you did not clearly understand the risk you took by going to trial, I felt very strongly that it was a mistake for you to ignore the

advice of your lawyers, who you chose to fire and who you chose to proceed on your own without.

. . . .

I'm very concerned about your mental health ... and I think this is a tragic thing.

■ Although the record reflects that the trial court advised defendant of the charges against him and the possible penalties, the trial court made no attempt to question defendant about his understanding of what it would mean to proceed without counsel, despite the many occasions on which defendant expressed his unequivocal desire and apparent financial inability to retain a lawyer. The trial court never inquired about defendant's financial condition or explained to defendant that he was entitled to a court-appointed attorney if indigent. The trial court did not inquire into defendant's educational background, his familiarity with the legal system and the rules of evidence and criminal procedure, or his understanding of the many risks of self-representation.

■ In addition, although the trial court was aware of defendant's mental problems, it did not inquire into how defendant's mental condition might affect his understanding of the consequences of waiver of counsel. Defendant underwent a psychiatric examination before trial and was found competent to stand trial, but this finding is not a substitute for the level of inquiry and degree of competency necessary for a valid waiver of counsel. *See People v. Arguello, supra; see also United States v. McDowell,* 814 F.2d 245 (6th Cir.1987)(the degree of competency required to waive counsel is vaguely higher than the competency to stand trial).

Admittedly, the court made several statements suggesting that it "would be a good idea" for defendant to retain a lawyer, but these advisements lacked the specificity necessary for us to conclude that defendant fully understood the implications of his conduct.

The prosecution argues that, although the trial court did not conduct the specific colloquy contemplated by *Arguello,* many of the questions did not apply to defendant because he was not indigent. We do not read *Arguello*

as applying only when a defendant has been determined indigent. Moreover, when a defendant appears before the trial court and indicates that he is financially unable to retain counsel, the court has an obligation to make a thorough inquiry into the defendant's financial situation to determine whether counsel may be appointed at the state's expense. *King v. People, supra; People v. Tellez,* 890 P.2d 197 (Colo.App.1994). The trial court made no such inquiry here.

■ Finally, defendant did not unequivocally waive his right to counsel. Although defendant told the court that he "guessed" he was ready to proceed to trial pro se, he continued to express his desire for legal representation. "In light of the strong presumption against the waiver of a fundamental constitutional right, a court must make careful inquiry of a defendant who, having previously indicated a desire to retain counsel, stands before the court on the day of trial unrepresented." *King v. People, supra,* 728 P.2d at 1269.

In our view, defendant's purported express waiver was invalid because the trial court's inquiries were not adequate to establish that defendant was aware of the dangers and disadvantages of self-representation. Further, defendant was not advised of his right to court-appointed counsel if he were deemed indigent.

### B.

■ We also reject the prosecution's argument that defendant's overall course of conduct shows an unequivocal intent to give up his right to counsel and thus constitutes an implied waiver.

■ Before a reviewing court can find a valid waiver based on conduct, there must be ample, unequivocal evidence in the record that the defendant was advised properly in advance of the consequences of his actions. *See People v. Arguello, supra.* In sum, the record before us does not provide the requisite showing that defendant knowingly acted in a manner which would meet the test for an implied waiver of counsel—"an *unequivocal* intent to relinquish or abandon his right to legal representation." *King v. People, su-*

*pra,* 728 P.2d at 1269 (emphasis added). Defendant's conduct cannot be considered a valid waiver of his right to counsel in the absence of proof that he was adequately informed so as to understand the consequences of his actions.

The record demonstrates that defendant did not have any prior criminal trial experience and suffered from a mental condition. Contrary to the prosecution's suggestion, defendant's representation of himself can hardly be described as "competent." Defendant did not present certain evidence and testimony to support his theory of defense, and his examination of the prosecution's witnesses was generally ineffective. Often defendant's questioning of the witnesses actually resulted in his testifying. The record as a whole demonstrates that defendant was unfamiliar with the rules of evidence and criminal procedure. Further, defendant lodged no objections to the jury instructions, which were arguably incorrect.

Defendant was not disruptive or uncooperative; indeed, the record reflects that he was deferential and respectful to the trial court during the proceedings. Nor is there evidence that defendant's failure to obtain a lawyer was designed to hinder the proceedings or otherwise frustrate the criminal process. Additionally, the trial court specifically acknowledged that defendant did not clearly understand the situation: "I've felt that you did not clearly understand the risk you took by going to trial."

Thus, under the totality of the circumstances, we conclude that defendant did not impliedly waive his right to counsel.

## II.

Defendant next argues that the evidence was insufficient to support his convictions. Because this is a dispositive issue, we will address it, and we conclude the evidence was sufficient.

When assessing the sufficiency of the evidence in support of a finding of guilt, a reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of the accused's guilt beyond a reasonable doubt. In applying this standard, we must give the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence. *People v. Gonzales,* 666 P.2d 123 (Colo.1983).

Section 18–3–203(1)(f), C.R.S.2003, proscribes the following conduct as a second degree assault: "While lawfully confined or in custody, [the defendant] knowingly and violently applies physical force against the person of a peace officer or firefighter engaged in the performance of his or her duties." Defendant argues that (1) there was no evidence that he was in custody at the time of the officer's injuries; and (2) the evidence was insufficient to establish that one officer's injuries was a result of defendant's knowing application of violent physical force.

### A.

First, the evidence was sufficient to establish that defendant was in custody.

When arrest is resisted, the person arrested may not be deemed "in custody" until the arrest is effected:

> In this situation to effect an arrest, the peace officer must apply a level of physical control over the person resisting the arrest so as to reasonably ensure that the person does not leave. Once the arrest has been effected, then the person is in custody for purposes of section 18–3–203(1)(f).

*People v. Armstrong,* 720 P.2d 165, 169 (Colo. 1986); *accord People v. Ortega,* 899 P.2d 236, 237–38 (Colo.App.1994). However, contrary to defendant's argument, we do not read *Armstrong* as always requiring a formal arrest before a person is deemed to be in custody for purposes of § 18–3–203(1)(f). Instead, the peace officer must have applied a level of physical control over the person being detained so as reasonably to ensure that the person does not leave. *People v. Ortega, supra.*

Here, the record demonstrates that the police, in an effort to stop defendant from fleeing, placed stop sticks on the road. When defendant drove over the stop sticks, three of his tires burst and his car rolled to a stop. An officer pulled up behind defendant,

emerged from his car, drew his weapon, and ordered defendant to turn around with his hands on the back of his head because he was under arrest. The officer grabbed defendant's arm and repeated numerous times to defendant that he was under arrest, but defendant resisted by taking his arm away and then eventually lunging at the officers.

This evidence supports a finding that the officers applied a sufficient level of physical control so as reasonably to ensure that defendant did not leave and therefore that defendant was in custody for purposes of § 18-3-203(1)(f).

### B.

We also reject defendant's contention that there was insufficient evidence to establish that he knowingly applied violent physical force against one of the officers.

At trial, defendant admitted to assaulting two officers at the scene. This testimony was corroborated by testimony of the other officers. Thus, viewed in the light most favorable to the prosecution, this evidence, if presented at the new trial, would be sufficient to support defendant's convictions.

### III.

Based on our decision to reverse and remand for a new trial, we decline to address the remaining issues raised by defendant.

The judgment of conviction and sentence are reversed, and the case is remanded to the trial court for a new trial consistent with the views expressed in this opinion.

Judge CASEBOLT and Judge LOEB concur.