134 P.3d 522 (2006)
THE PEOPLE OF THE STATE OF COLORADO, Petitioner-Appellee,
In the Interest of D.S.L., Juvenile-Appellant.
No. 05CA0850.
Colorado Court of Appeals. Division IV.
February 23, 2006.
*523 John W. Suthers, Attorney General, Elizabeth Rohrbough, Assistant Attorney General, Denver, Colorado, for Petitioner-Appellee.
David A. Kaplan, Colorado State Public Defender, Tracy A. Drager, Deputy State Public Defender, Denver, Colorado, for Juvenile-Appellant.
KAPELKE[*], J.
D.S.L., a juvenile, appeals the trial court's judgment adjudicating him delinquent based on a finding that he committed acts which, if committed by an adult, would constitute the offenses of false reporting and second degree assault on a peace officer. D.S.L. also appeals his sentence. We affirm the judgment, vacate the sentence, and remand for resentencing.
The trial court conducted a consolidated suppression motion hearing and delinquency adjudication proceeding. The following evidence was adduced at that proceeding.
At approximately 10:30 p.m. on the evening in question, two police officers noticed a Pontiac Grand Am, which appeared to be painted either tan or gold. The car was parked in a lot adjacent to an assisted living facility. Although it was evident that the car was running, the headlights were turned off. The officers could not see inside the car because the windows were tinted.
One of the officers had heard a report the night before that a tan or gold Pontiac Grand Am with a temporary license plate had been stolen. Accordingly, the officers decided to investigate.
The officers activated the emergency lights of their patrol car and pulled alongside the parked car. As the officers approached the *524 car on foot, they could see that it had a temporary registration mounted on the rear. One of the officers contacted the driver and obtained her proof of identification and the documentation of the temporary registration. The second officer asked the lone passenger in the car, D.S.L., to identify himself. D.S.L. told the officer that his name was Daniel Vigil and that his date of birth was May 17, 1988. After obtaining the vehicle identification number (VIN) from the car, the two officers returned to their patrol car to verify all the information.
The officers were able to confirm the driver's identification, the temporary registration, and the VIN. They were unable, however, to find any record for a "Daniel Vigil." This uncertainty was significant to one of the officers, who testified that in ninety percent of the cases in which he had been involved, the inability to verify a juvenile's identity was attributable to the juvenile's having provided false information.
The officer's suspicion that D.S.L. had provided a false name was bolstered by the fact that the computer, which was programmed to retrieve "close matches," indicated that a juvenile with the same first name and a "similar" date of birth was wanted as a runaway.
At this point, the officers asked D.S.L. to step out of the car. D.S.L. complied. The officers informed him that, although he was not under arrest, he would be handcuffed while they investigated his identity. Upon hearing this, D.S.L. told the officers that his mother was inside the assisted living facility and would confirm his identity.
One of the officers walked toward the building to find D.S.L.'s mother as the other officer began to place handcuffs on D.S.L.'s wrists. D.S.L. quickly spun around and tried to pull away, snagging the officer's finger in the chain connecting the two handcuffs and thus breaking the officer's finger in three places.
A violent struggle ensued as the officers took D.S.L. into custody. Soon thereafter, D.S.L.'s mother arrived and told the officers D.S.L.'s real name and date of birth.

I.
D.S.L. first argues that the trial court erred by denying his motion to suppress evidence obtained as the result of an allegedly unlawful seizure. We disagree.
D.S.L. does not specify what evidence he was seeking to have suppressed. The record does not indicate that the officers discovered any physical evidence during his detention, and the only statement D.S.L. made during that brief detention was that his mother was inside the building. That remark was neither inculpatory nor causally connected to the officers' contact with D.S.L.'s mother, which occurred after the mother arrived at the scene as the officers were attempting to take D.S.L. into custody following the assault. Further, we reject D.S.L.'s suggestion that evidence of the assault was the product of the purportedly unlawful seizure. See Brown v. City of Danville, 44 Va.App. 586, 606 S.E.2d 523 (2004)(unlawful search of defendant's person by police officers did not render their testimony regarding defendant's subsequent struggle inadmissible as fruit of poisonous tree, but rather, testimony was admissible for purpose of determining defendant's guilt on charge of obstruction of justice; defendant's "post-frisk" struggle with officers constituted a separate and distinct criminal offense, and thus, the exclusionary rule did not apply to officers' testimony describing events that occurred after initial attempted pat-down).
Accordingly, because defendant has not demonstrated that any error in the trial court's denial of his suppression motion affected his substantial rights, we perceive no basis for reversal. See C.A.R. 35(e).

II.
D.S.L. contends that the trial court erred by finding, for purposes of the delinquency adjudication, that he was "in custody" when he assaulted the officer. Again, we disagree.
When reviewing the sufficiency of the evidence supporting an adjudication of juvenile delinquency, the standards are the same as those to be applied in a criminal case. The reviewing court must determine whether the *525 evidence, viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crimes charged beyond a reasonable doubt. People in Interest of J.P.L., 49 P.3d 1209, 1210 (Colo.App.2002).
As relevant here, a person commits second degree assault against a peace officer if "[w]hile lawfully confined or in custody, he or she knowingly and violently applies physical force against the person of a peace officer. . . engaged in the performance of his or her duties." Section 18-3-203(1)(f), C.R.S.2005.
To be deemed to be in custody for purposes of this section, a person need not be subject to a formal arrest. All that is required is that the "peace officer must have applied a level of physical control over the person being detained so as reasonably to ensure that the person does not leave." People v. Rawson, 97 P.3d 315, 323 (Colo.App. 2004).
The evidence in this case shows that, at the time of the assault, the officer was applying a level of physical control over D.S.L. to ensure that he would not leave.
Contrary to D.S.L.'s suggestion, it is irrelevant that the trial court, in addressing the suppression motion, made an alternative finding that the initial portion of the interaction was a consensual encounter and that defendant was not in custody. That determination has no bearing on our assessment of the evidence supporting the delinquency adjudication.
Further, we reject D.S.L.'s argument that evidence of the assault cannot be considered because the altercation would not have occurred but for the allegedly unlawful detention. Even if we were to assume that he was illegally held, the unlawfulness of a detention does not absolve a person of liability for criminal conduct committed during that detention. See generally People v. Lanzieri, 25 P.3d 1170, 1175 (Colo.2001)(the same public policy that permits a defendant to be convicted of resisting arrest even if the arrest is unlawful permits a defendant to be convicted of escape despite procedural defects in the confinement or sentence).

III.
D.S.L. contends that the trial court abused its discretion in crafting a remedy for a discovery violation. We disagree.
Discovery in juvenile delinquency proceedings is governed by Crim. P. 16. See C.R.J.P. 3.3.
Crim. P. 16(III)(g) states:
If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed or enter such other order as it deems just under the circumstances.
This rule gives the trial court broad discretion in determining the appropriate remedy, if any, for a discovery violation. People v. Loggins, 981 P.2d 630 (Colo.App. 1998).
Here, after the delinquency trial had begun, D.S.L. moved for dismissal based on the prosecution's failure to provide in discovery a videotaped interview of D.S.L. and photographs of his injuries and of the scene. The prosecutor then informed the court that the materials in question were contained in a police department internal affairs file and that she had not previously known of their existence. The trial court denied D.S.L.'s request for dismissal and instead ordered a one-day recess to allow D.S.L. an opportunity to examine the undisclosed materials.
When the proceedings reconvened, D.S.L.'s counsel renewed her request for dismissal. As grounds, she asserted that it would be necessary to call D.S.L. as a witness to admit the photographs of his injuries. In response, the prosecutor stipulated to the admissibility of the photographs. The trial court then denied the dismissal motion.
On appeal, D.S.L. argues that the trial court's remedy was insufficient because it "hindered [counsel's] ability to assert affirmative *526 defenses." However, D.S.L. does not specify which affirmative defenses he would have raised or state how, if at all, these defenses could have been established had the materials been provided sooner. Further, although D.S.L. maintains that the untimely disclosure prevented him from "investigating and calling any witnesses who may have been involved in the internal affairs investigation," he does not identify the witnesses or demonstrate how their testimony would have been favorable.
Moreover, D.S.L. has not included the videotape or the photographs as part of the record, see People v. Dixon, 950 P.2d 686 (Colo.App.1997), and he does not dispute the People's assertion that he did not seek to introduce them into evidence despite the prosecutor's stipulation to their admissibility.
Further, while D.S.L. argues that the untimely disclosure deprived him of an opportunity to use these items in his cross-examination of the victim, he does not explain why he failed to ask the court to recall the victim for further cross-examination. See, e.g., People v. Lafferty, 9 P.3d 1132, 1136 (Colo.App.1999) (trial court remedied discovery violation by giving defendant the opportunity to recall any of the prosecution witnesses).
Thus, because D.S.L. has not demonstrated any prejudice resulting from the delay in disclosure, we perceive no abuse of discretion in the remedy crafted by the trial court.

IV.
D.S.L. contends that the trial court erred by concluding it was statutorily required to order that the delinquency sentence for second degree assault against a peace officer run consecutively to a sentence imposed in a separate delinquency proceeding. We agree and therefore vacate the sentence and remand for resentencing.
In interpreting statutes, we must determine and give effect to the intent of the General Assembly. We construe the statute as a whole, in an effort to give consistent, harmonious, and sensible effect to all its parts, and we read words and phrases in context and construe them according to the rules of grammar and common usage. We do not depart from the plain meaning of statutory provisions unless it leads to an absurd result. People v. Banuelos-Landa, 109 P.3d 1039, 1041 (Colo.App.2004).
D.S.L. was sentenced to the custody of the Department of Human Services (DHS) under § 19-2-909, C.R.S.2005. Subject to certain exceptions not applicable here, § 19-2-909 authorizes the court to sentence a juvenile to the custody of the DHS for a period of two years, which may be extended for two additional years, pursuant to § 19-2-921(4), C.R.S.2005, upon petition by the DHS.
Although §§ 19-2-516(2) and 19-2-908(1)(b), C.R.S.2005, authorize the trial court to sentence a "repeat juvenile offender" (such as D.S.L.) outside of the home "for not less than one year," these statutes do not authorize a court to sentence a juvenile to the custody of DHS for a period longer than that authorized by § 19-2-909.
Although no statute in the Children's Code authorizes consecutive sentences to the custody of the DHS, the trial court in this case, relying on People in Interest of E.Z.L., 815 P.2d 987, 989 (Colo.App.1991), concluded that the consecutive sentencing provision for adult criminal offenders contained in § 18-3-203(1)(f), C.R.S.2005, required it to order that D.S.L.'s two-year sentence to the DHS be served consecutively to another DHS sentence D.S.L. was serving in connection with an unrelated delinquency proceeding.
Section 18-3-203(1)(f), the statute defining the criminal offense of second degree assault against a peace officer, contains the following sentencing provision:
A sentence imposed pursuant to this paragraph (f) shall be served in the department of corrections and shall run consecutively with any sentences being served by the offender; except that, if the offense is committed against a person employed by the division in the department of human services responsible for youth services, the court may grant probation or a suspended sentence in whole or in part, and such sentence may run concurrently or consecutively with any sentences being served.
In People in Interest of E.Z.L., supra, a division of this court concluded that the mandatory *527 consecutive sentencing provision for adult criminal offenders convicted of attempted escape, § 18-8-208.1(2), C.R.S.2005, could be construed in pari materia with the general sentencing statute for juvenile delinquents, which, at that time, contemplated placement in the Department of Institutions. Although the division in E.Z.L. acknowledged that the supreme court had previously held that the Children's Code does not authorize consecutive terms of commitment, see S.G.W. v. People, 752 P.2d 86 (Colo.1988), the division nevertheless concluded that consecutive sentences were authorized for a juvenile adjudicated delinquent for an attempted escape because § 18-8-210.1, C.R.S.2005, which defines "custody" and "confinement" for purposes of the adult criminal escape statutes, specifically includes juveniles detained in conjunction with delinquency proceedings.
We conclude that E.Z.L. is inapposite. The attempted escape statute at issue in E.Z.L., § 18-8-208.1(2), requires that "the sentence" be imposed consecutively to any sentence being served by the offender. By contrast, § 18-3-203(1)(f) requires consecutive sentences "in the department of corrections." This distinction is important because a juvenile can be sentenced to the Department of Corrections (DOC) only in limited circumstances, and it is undisputed that none of those circumstances are present in this case. See, e.g., § 18-1.3-407, C.R.S.2005 (outlining procedures by which a sentence to the youthful offender system can be revoked and a DOC sentence can be imposed); § 19-2-517, C.R.S.2005 (DOC sentencing for juveniles convicted as adults, pursuant to direct filing procedure, of class one and two felonies); § 19-2-601(8), C.R.S.2005 (procedure for transfer to DOC of an aggravated juvenile offender when the offender reaches the age of twenty years and six months).
Further, unlike the attempted escape statute interpreted in E.Z.L., the provision of § 18-3-203(1)(f) prohibiting the knowing application of violent force against a peace officer does not incorporate a statutory definition of "confined or in custody" encompassing juveniles who are detained in conjunction with delinquency proceedings.
In S.G.W., the court held that consecutive sentences were not permitted because the Children's Code was silent on the issue. In reaching this conclusion, the supreme court emphasized that it is particularly appropriate to apply the rule of lenity in resolving statutory ambiguities in juvenile delinquency proceedings to further the General Assembly's "beneficent purposes." The court also noted that it has "consistently emphasized that a delinquency proceeding is not a criminal prosecution." S.G.W. v. People, supra, 752 P.2d at 90.
Accordingly, we conclude that the consecutive sentencing provision of § 18-3-203(1)(f) does not apply to juveniles who are adjudicated delinquent and sentenced to the DHS. We therefore vacate D.S.L.'s sentence insofar as the trial court ordered that it be served consecutively to the other DHS sentence, and we remand for resentencing.

V.
Finally, D.S.L. contends that the trial court erred by ordering him to pay restitution to the victim for overtime work that the victim was unable to perform because of his broken finger. We disagree.
Section 19-2-918, C.R.S.2005, authorizes a court, as part of a juvenile delinquency sentence, to order that the juvenile make restitution to the victim in the same manner as required by the restitution statutes governing adult criminal prosecutions.
Thus, in this case, the court was authorized to require that D.S.L. make restitution for "any pecuniary loss suffered by [the] victim," [including] "losses or injuries proximately caused by [D.S.L.'s] conduct ... that can be reasonably calculated and recompensed in money." Section 18-1.3-602(3)(a), C.R.S. 2005.
"Proximate cause" has been defined for purposes of restitution as "a cause which in natural and probable sequence produced the claimed injury" and "without which the claimed injury would not have been sustained." People v. Clay, 74 P.3d 473, 475 (Colo.App.2003)(quoting People v. Stewart, 55 P.3d 107, 116 (Colo.2002), and CJI-Crim. 9:10, 9(3) (1983)).
*528 However, § 18-1.3-602(3)(a) contains this limiting provision: Restitution "does not include damages for ... loss of future earnings."
Recently, in People v. Bryant, 122 P.3d 1026, 1029 (Colo.App.2005), a division of this court interpreted § 18-1.3-602(3)(a) and held that although a court may order restitution for lost wages "not received by the victim from the date the crime was committed to the date restitution is imposed," it may not order restitution for "`loss of future earnings' [which] are earnings not expected to be received by the victim after restitution is imposed." We find the reasoning of Bryant persuasive and follow it here.
The assault in this case occurred on January 15, 2005. At the sentencing hearing on April 1, 2005, the victim testified that he had received approval of his request to work thirty-two hours of overtime during February providing security for a sporting event. The victim further testified that, as a result of his having broken a finger, he was assigned to desk duty and was not permitted to work those overtime hours. To determine the amount of his loss, the victim surveyed five other officers who had worked the event and ascertained they were paid an average wage of $49.33 per hour.
Based on this testimony, the trial court ordered D.S.L. to pay the victim $1331.84 of restitution for lost overtime wages.
On appeal, D.S.L. asserts that the court's restitution order was based on mere "speculation." We disagree. The order that D.S.L. make restitution for the victim's lost overtime wages was based on a reasonable calculation of income the victim was unable to earn, prior to the time of sentencing, as a proximate result of D.S.L.'s wrongful conduct. Accordingly, we uphold this portion of the court's sentencing order. See People v. Lassek, 122 P.3d 1029 (Colo.App.2005)(the People bear the burden of proving by a preponderance of the evidence the amount of restitution owed, and the court's restitution ruling will not be disturbed on appeal absent a gross abuse of discretion).
The judgment is affirmed. The sentence is vacated, and the case is remanded for resentencing in accordance with the views expressed in this opinion.
Judge VOGT and Judge FURMAN concur.
NOTES
[*] Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S.2005.