23CA1684 Peo v Hampton 01-09-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1684
City and County of Denver District Court No. 22CR2442
Honorable Karen L. Brody, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Rashad A. Hampton,

Defendant-Appellant.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE WELLING
Brown and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 9, 2025

---

Philip J. Weiser, Attorney General, Josiah Beamish, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Nicole M. Mooney, Alternate Defense Counsel, Golden, Colorado, for Defendant-Appellant

¶ 1     Defendant, Rashad A. Hampton, appeals the judgment of conviction entered upon jury verdicts finding him guilty of felony second degree assault of a peace officer while lawfully confined or in custody, in violation of section 18-3-203(1)(f), C.R.S. 2024, and misdemeanor third degree assault.  Hampton contends that because he wasn't lawfully confined or in custody at the time of the alleged assault, the prosecution didn't present sufficient evidence to prove the felony assault conviction and that the misdemeanor assault conviction should be merged into the felony assault conviction.  We disagree and, therefore, affirm the judgment.

## I.     Background

¶ 2     On the morning in question, Hampton was in a courtroom in the Denver District courthouse regarding an unrelated case.  While waiting for his case to be called, sheriff's deputies became aware that warrants had been issued for Hampton's arrest.  After receiving verbal confirmation from the National Crime Information Center (NCIC) that Hampton had active warrants for his arrest, the deputies informed Hampton's attorney of the warrants and that he

1

would be taken into custody.[1]  Hampton's attorney entered the courtroom and pulled Hampton aside to inform him of this news. Upon hearing this news, Hampton became agitated and wanted to know the basis for the warrants, which wasn't known by his attorney or the sheriff's deputies at the time.

¶ 3     Deputy Telisma was stationed inside the courtroom, and, after confirming the warrants, Deputy Lukajic entered the courtroom and stood near the doors.  Hampton remained seated when his case was called, and, at the conclusion of the case, the judge instructed the deputies to take Hampton into custody.  Deputy Telisma approached Hampton from the front and told him to stand up and give his personal belongings to his girlfriend, who was present in the courtroom.  Hampton complied with the order but remained agitated and denied having any warrants.  Deputy Telisma informed Hampton that he was going to touch him and reached for Hampton's wrist.  Hampton pulled away and told Deputy Telisma not to touch him yet.

---

[1] "The NCIC computer system provides police officers throughout the country with information about outstanding warrants."  *See People v. Fields*, 785 P.2d 611, 612 n.2 (Colo. 1990).

¶ 4     Deputy Lukajic, who had approached Hampton from behind, again informed Hampton that he would be touched and reached for Hampton's wrist. Hampton pushed Deputy Lukajic. When Deputy Lukajic again attempted to seize Hampton's wrist, Hampton grabbed the deputy and pushed him into the courtroom door. Hampton and Deputy Lukajic then fell to the floor, and Deputy Lukajic's back struck a courtroom bench.

¶ 5     An altercation ensued, during which additional deputies, including Deputy Goularte, responded to a call for assistance and attempted to get Hampton to comply with their orders to put his hands behind his back so that he could be handcuffed. The deputies used a taser to obtain Hampton's compliance and place him in handcuffs.

¶ 6     The State charged Hampton with two counts of second degree assault of a peace officer causing serious bodily injury (naming Deputies Lukajic and Goularte as victims) and three counts of second degree assault of a peace officer while lawfully confined or in custody (naming Deputies Goularte, Lukajic, and Telisma as the

victims).[2]  The jury found Hampton guilty of one count of the lesser offense of misdemeanor third degree assault and of one count of second degree assault of a peace officer while lawfully confined or in custody.  Deputy Lukajic was the victim for each count.  The jury acquitted Hampton of the other charges.  The district court sentenced Hampton to one year in prison on the felony assault conviction and to a consecutive 365 days in jail on the misdemeanor conviction.

## II.    Sufficiency of the Evidence

¶ 7    Hampton asserts that the evidence was insufficient to support his second degree assault conviction because it didn't adequately establish that his allegedly criminal conduct occurred when he was confined or in custody or that any such custody was lawful.  We address and reject these contentions.

### A.    Legal Authority and Standard of Review

¶ 8    To satisfy due process, the prosecution is required to prove all elements of a crime beyond a reasonable doubt.  *Montez v. People*,

---

[2] Hampton was originally also charged with a resisting arrest count, which was later dismissed.  He was also originally charged with second degree assault causing bodily injury, but the prosecution later amended the count to allege serious bodily injury.

2012 CO 6, ¶ 21 (first citing U.S. Const. amend. XIV, § 1; and then citing Colo. Const. art. II, § 25). As relevant here, a person commits second degree assault if, "[w]hile lawfully confined or in custody, [they] knowingly and violently appl[y] physical force against the person of a peace officer . . . engaged in the performance of [their] duties." § 18-3-203(1)(f).

¶ 9     While "[s]ection 18-3-203(1)(f) may most often be applicable in circumstances in which a peace officer is attempting to effect a formal arrest," *see People v. Ortega*, 899 P.2d 236, 238 (Colo. App. 1994), a formal arrest isn't required before a person may be deemed to be "in custody" for purposes of the statute. *See People in Interest of D.S.L.*, 134 P.3d 522, 525 (Colo. App. 2006); *People v. Rawson*, 97 P.3d 315, 323 (Colo. App. 2004); *Ortega*, 899 P.2d at 238. Instead, when a person subject to an arrest resists that arrest, the person is in custody after an arrest has been "effected." *Thomas v. People*, 2021 CO 84, ¶ 15; *People v. Armstrong*, 720 P.2d 165, 169 (Colo. 1986). To effect an arrest for custodial purposes under section 18-3-203(1)(f), all that is required is that "the peace officer . . . apply a level of physical control over the person resisting the arrest so as to reasonably ensure that the person does not leave." *Armstrong*, 720

P.2d at 169; *see also Wieder v. People*, 722 P.2d 396, 398 (Colo. 1986); *D.S.L.*, 134 P.3d at 525; *Rawson*, 97 P.3d at 323; *Ortega*, 899 P.2d at 238.

¶ 10    The point at which a person is "in custody" is pivotal to the determination of whether a defendant is guilty of second degree assault as defined in section 18-3-203(1)(f). *Wieder*, 722 P.2d at 398; *Armstrong*, 720 P.2d at 168-69. This is so because, "up until the point when the arrest is effected, a person may commit resisting arrest but not second degree assault, and once the arrest is effected, a person may commit second degree assault but not resisting arrest." *Thomas*, ¶ 15 (citing *Armstrong*, 720 P.2d at 169). The determination of whether, based on the totality of the circumstances, a person is in custody for purposes of section 18-3-203(1)(f) is, however, within the province of the jury. *See Wieder*, 722 P.2d at 398; *Armstrong*, 720 P.2d at 169.

¶ 11    We review sufficiency of the evidence claims de novo to determine whether the evidence presented was sufficient in both quality and quantity to sustain a conviction. *McBride v. People*, 2022 CO 30, ¶ 38; *People v. Roggow*, 2013 CO 70, ¶ 13. "In so doing, we must determine whether the relevant evidence, when

viewed as a whole in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charges beyond a reasonable doubt." *Roggow,* ¶ 13. "A verdict cannot rest on guessing, speculation, conjecture, or a mere modicum of relevant evidence." *McBride,* ¶ 38.

¶ 12 "An appellate court may not serve as a thirteenth juror and consider whether it might have reached a different conclusion than the jury." *People v. Harrison,* 2020 CO 57, ¶ 33. Instead, we afford the prosecution the benefit of every reasonable inference that might be fairly drawn from the evidence, and, where reasonable minds could differ, deem the evidence sufficient to sustain a conviction. *Thomas,* ¶ 10; *People v. Alemayehu,* 2021 COA 69, ¶ 18.

¶ 13 "It is the fact finder's role to weigh the credibility of witnesses, to determine the weight to give all parts of the evidence, and to resolve conflicts, inconsistencies, and disputes in the evidence." *People v. Poe,* 2012 COA 166, ¶ 14. Therefore, determinations on issues of credibility and weight will not be disturbed on appeal "unless the evidence is legally insufficient to support a finding of guilt beyond a reasonable doubt." *People v. Padilla,* 113 P.3d 1260,

7

1261 (Colo. App. 2005). "The jury, not the court, must perform the fact-finding function when conflicting evidence — and conflicting reasonable inferences — are presented" and, therefore, in a sufficiency of the evidence inquiry, "[an appellate] court must not invade the province of the jury by second-guessing its conclusion when the record supports the jury's findings." *People v. Perez*, 2016 CO 12, ¶ 31.

## B. "Confined or In Custody" Element

¶ 14    Hampton argues that the evidence didn't sufficiently establish that he was in custody "at the point that he put his hands on [Deputy] Lukajic's chest that resulted in [Deputy] Lukajic's injuries from falling into the door and bench." He instead claims that the evidence supports a finding that his conduct constituted, at most, the crime of resisting arrest. We aren't persuaded.

¶ 15    At trial, Deputy Telisma testified that, before the incident became physical, Deputy Lukajic was standing near the courtroom doors, which were the courtroom's only public entrance and exit. Deputies Telisma and Lukajic stated that, at that point, Hampton wouldn't have been permitted to leave. The deputies also agreed that Hampton knew he would be taken into custody on the

warrants and that he wasn't free to leave the courtroom. After his unrelated case had concluded, the judge instructed the deputies to take Hampton into custody, and Deputies Telisma and Lukajic accordingly surrounded him and attempted to grab his wrist. The prosecution introduced into evidence video recordings from the courtroom surveillance system and the deputies' body cameras, which captured these events and the ensuing physical altercation.

¶ 16    Hampton's girlfriend confirmed that, before his unrelated case was called, Hampton had been notified that he had warrants for his arrest and that he would be taken into custody at the end of the proceeding. She said that, when told about the warrants, Hampton looked to her and said, "She did it again."

¶ 17    Hampton testified at trial and admitted that his attorney had notified him about the warrants before the unrelated case was called. And he acknowledged that his statement, "She did it again," reflected his belief that a person he knew had accused him of something that caused the warrants to be issued. Hampton further testified that, when Deputy Telisma told him to give his personal belongings to his girlfriend, he knew that he would be placed into custody and that he wasn't attempting to leave the courthouse.

¶ 18     A captain with the Denver County Sheriff's Department, who was qualified as an expert in use of force and investigations, testified without objection that, in order to ensure an officer's safety when taking someone into custody, the officer would take control of the person's wrist and place it behind their back to apply the handcuffs. The captain also opined that Deputy Telisma's and Deputy Lukajic's attempts to grab Hampton's wrist were appropriate uses of force.

¶ 19     Viewing this evidence in the light most favorable to the prosecution and affording the prosecution the benefit of every reasonable inference that may be drawn therefrom, we conclude that the evidence was sufficient for a reasonable jury to find beyond a reasonable doubt that, at the time Hampton assaulted Deputy Lukajic, he was in custody because the deputies had established a level of physical control over Hampton so as to reasonably ensure that he wouldn't leave the courtroom. *See People v. Caldwell*, 43 P.3d 663, 672 (Colo. App. 2001) ("If the prosecution presents evidence from which the trier of fact may properly infer the elements of the crime, the evidence is sufficient to sustain the conviction."); *Clark v. People*, 232 P.3d 1287, 1293 (Colo. 2010)

("Jurors must rely on the evidence presented at trial and their own common sense to determine the question of guilt.").

¶ 20 Specifically, we note that (1) the deputies had positioned themselves in the courtroom to prevent Hampton from leaving; (2) Hampton had been informed by the deputies, his attorney, and the court that he would be taken into custody on the arrest warrants; (3) Hampton assumed the warrants may have been issued based on the accusations of someone known to him; (4) Deputy Telisma had instructed Hampton to give his personal items to his girlfriend before being taken into custody; (5) Hampton complied with this instruction and acknowledged that, when providing the items to his girlfriend, he knew he would be taken into custody, and wasn't attempting to leave the courthouse; and (6) the deputies made multiple attempts to grab Hampton's wrist to apply handcuffs. *See D.S.L.,* 134 P.3d at 524-25 (defendant was in custody for purposes of section 18-3-203(1)(f) where officers told defendant to step out of his car, told him he would be handcuffed and started to handcuff him); *Rawson,* 97 P.3d at 323-24 (defendant was in custody for purposes of section 18-3-203(1)(f) where police stopped defendant's car with stop sticks, pointed a

gun at the defendant and grabbed the defendants arm several times).

¶ 21    Hampton relies on *Armstrong* and *Thomas* to support his position that "only after [he] was tased and handcuffed was sufficient physical control exercised over him for him to be considered in custody." Therefore, he argues, he at most committed the offense of resisting arrest. We aren't persuaded that these cases compel a different result.

¶ 22    The relevant language from *Armstrong* that Hampton relies on is that

> [o]ne of the factors in making . . . a determination [as to whether the defendant was guilty of both resisting arrest and second degree assault, or whether he was guilty only of resisting arrest or only of second degree assault] shall be whether the actions of [the defendant], which caused injury to the officers, were continuous, stemming from his efforts to resist arrest, or whether there was a break between his actions to thwart [the] officer[']s] . . . efforts to arrest him and the actions which lead to the injury of [the] officers . . . .

*Armstrong*, 720 P.2d at 169. Hampton argues that his actions were continuous and stemming from an effort to resist the officers' attempts to handcuff him.

¶ 23     In *Thomas*, the supreme court concluded that the defendant's conduct after he was in custody couldn't be relied on to resolve a sufficiency of the evidence challenge to his conviction for resisting arrest. *Id.* at ¶¶ 1-2, 11-18.  In reaching this conclusion, the court held that the defendant's arrest was effected, and he was thus in custody, once the deputies had handcuffed him and that "[t]hat was the line of demarcation at which the crime of resisting arrest ended and the potential to commit the crime[] of second degree assault . . . began." *Id.* at ¶ 17.  Hampton claims that, when he was handcuffed, "[i]t is only at that point that the officers established physical control over [him] as required in *Thomas*."

¶ 24     But the instructiveness of these cases is limited with respect to the sufficiency of the evidence issue before us.  We agree that *Armstrong* says that whether a defendant's actions were continuous or broken is a factor to be considered in determining the type of offense committed.  But, in that case, the supreme court made clear that such determinations are for the trier of fact.  *Armstrong*, 720 P.2d at 169.  And, in *Thomas*, the court's conclusion that the defendant was definitively in custody once he was handcuffed was based on the factual circumstances of that particular case.  *Id.* at

13

¶¶ 2, 17. To the extent that the court in *Thomas* addressed the line between resisting arrest and committing an in-custody assault, the court didn't reach the question of at what point before the handcuffing a factfinder could have found the suspect was in custody; it simply held that, under the facts and circumstances of *Thomas*, the handcuffing was the latest point at which resisting arrest could have been committed. After all, as noted above, formal arrest and use of handcuffs aren't *required* to satisfy the "in custody" element of second degree assault as defined in section 18-3-203(1)(f).

¶ 25    The jury's guilty verdict on second degree assault against Deputy Lukajic necessarily required a finding that Hampton was in custody before Hampton applied physical force against him. *See People v. Mosely*, 2021 CO 41, ¶ 21 (by finding the defendant guilty of the charged offense, the jury necessarily found that the prosecution had proven beyond a reasonable doubt the elements of the offense). As concluded above, we deem the evidence sufficient to support the jury's finding that the deputies had effected an arrest of Hampton before his initial attack on Deputy Lukajic.

## C. "Lawful" Custody Element

¶ 26    Hampton also asserts that, even if he was in custody at the time of his assaultive conduct, the custody wasn't lawful because the arresting officers didn't possess a copy of the warrant when they arrested him, as required by 16-3-102, C.R.S. 2024.  He also argues that the constitutional right to due process requires officers to provide the warrant to an arrestee upon request.  We disagree.

¶ 27    Section 16-3-102(1)(a) provides that "[a] peace officer may arrest a person when . . . [h]e has a warrant commanding that such person be arrested. . . ."  We reject Hampton's interpretation of the word "has" to require a peace officer to be in physical possession of the warrant.  Instead, an arrest is deemed to be lawful when an officer relies on confirmation of the existence of a validly issued arrest warrant.  *See People v. Gouker*, 665 P.2d 113, 115-16 (Colo. 1983) (where the arresting officers learned of an outstanding, out-of-state arrest warrant for the defendant, the valid warrant provided the officers with sufficient probable cause to lawfully arrest the defendant).  And although Hampton questioned the reasons for the warrants when he was arrested, he didn't later challenge their validity.  *See, e.g., People v. Mitchell*, 678 P.2d 990, 993, 994-97

15

(Colo. 1984) (defendant's arrest, which was "based solely on [the] [o]fficer['s] . . . reliance upon the dispatcher's message that there was an outstanding warrant for the defendant," was unlawful because the arrest warrant was erroneously issued), *superseded by statute on other grounds as stated in People v. Woods*, 885 P.2d 287 (Colo. App. 1994); *Fields*, 785 P.2d at 613 (inaccurate warrant report in the NCIC was insufficient only because no warrant had actually been issued).  Accordingly, we reject Hampton's contention that his arrest wasn't lawful because the deputies effecting that arrest didn't possess a copy of the arrest warrant.

¶ 28    Hampton doesn't provide any argument or authority to support his constitutional due process argument that an arrestee is entitled to receive the warrant upon request, so we decline to address it.  *See People v. Houser*, 2020 COA 128, ¶ 24 (we will not consider a bald legal proposition presented without argument or development).

### III.   Merger

¶ 29    Lastly, Hampton argues that the third degree assault conviction should have been merged with the second degree assault conviction.  We disagree.

16

¶ 30     The Double Jeopardy Clauses of the United States and Colorado Constitutions protect against the imposition of multiple punishments for the same offense. *Reyna-Abarca v. People*, 2017 CO 15, ¶ 49. As relevant here, double jeopardy precludes a defendant from being "convicted of two offenses for the same conduct if the lesser offense is included in the greater." *Page v. People*, 2017 CO 88, ¶ 9 (citing § 18-1-408(1)(a), C.R.S. 2024).

¶ 31     "An offense is included in another offense when, as pertinent here, '[i]t is established by proof of the same or less than all the facts required to establish the commission of the [other] offense.'" *Thomas*, ¶ 23 (quoting § 18-1-408(5)(a)). In other words, "an offense is a lesser included offense of another offense if the elements of the lesser offense are a subset of the elements of the greater offense, such that the lesser offense contains only elements that are also included in the elements of the greater offense." *Reyna-Abarca*, ¶ 64. "A conviction for an offense that is a lesser included offense of a greater offense must merge into the conviction for the greater offense." *Page*, ¶ 9.

¶ 32    Whether two or more convictions must merge is a question of law that we review de novo. *Id.* at ¶ 6; *People v. Barry*, 2015 COA 4, ¶ 92.

¶ 33    Hampton's third degree assault conviction doesn't contain only elements that are also included in the elements of his second degree assault conviction. Specifically, third degree assault requires a defendant to "cause bodily injury to another person." § 18-3-204(1)(a), C.R.S. 2024. In contrast, second degree assault as defined in section 18-3-203(1)(f) doesn't require proof of any injury to anybody.

¶ 34    Thus, because proof of the elements of second degree assault, as defined in section 18-3-203(1)(f), wouldn't establish a third degree assault conviction, the convictions don't merge. *See People v. Rock*, 2017 CO 84, ¶ 16 ("[A]ny set of elements sufficient for commission of [a] lesser offense that is necessarily established by establishing the statutory elements of a greater offense constitutes an included offense.").

## IV.    Mittimus

¶ 35    Although not raised by the parties, our review of the record indicates that Hampton's mittimus mistakenly reflects that he was

convicted of second degree assault pursuant to section 18-3-203(1)(c.5). On remand, the trial court must amend the mittimus to reflect a conviction for the class 6 felony of second degree assault pursuant to sections 18-3-203(1)(f) and (2)(a). *See People v. Brown,* 2014 COA 155M-2, ¶ 40 (noticing an error in the mittimus not raised by any party and ordering the trial court to correct it on remand).

## V. Disposition

¶ 36    The judgment of conviction is affirmed, and the case is remanded for correction of the mittimus.

JUDGE BROWN and JUDGE MOULTRIE concur.