STATE

v.

Sol MARTINEZ.

No. 93–235–C.A.

Supreme Court of Rhode Island.

Dec. 9, 1994.

Lauren S. Zurier, Sp. Asst. Atty. Gen., Aaron L. Weisman, Asst. Atty. Gen., for plaintiff.

Richard K. Corley, Providence, for defendant.

## OPINION

WEISBERGER, Acting Chief Justice.

This case comes before us on the appeal of the defendant, Sol Martinez, from a judgment of conviction entered in the Superior Court for kidnapping of a minor (a child under the age of sixteen years) in violation of G.L.1956 (1981 Reenactment) § 11–26–1.4, as amended by P.L.1989, ch. 192, § 1. We affirm the judgment of conviction. The facts of the case insofar as pertinent to this appeal are as follows.

On April 12, 1991, an infant named Macayla Rose was born at the Women and Infants Hospital in the city of Providence, Rhode Island. Her parents were Patricia Cullen (Cullen) and Keith Rose. On that same date a woman came into Cullen's hospital room dressed in the garb of a hospital nurse or attendant. The woman appeared to be about six months pregnant. The baby girl was resting with her mother when the woman stated to Cullen that it was necessary to take the baby from the room in order to conduct blood tests. The woman left a beeper in the room and took the baby girl away from her mother. This woman was later identified as defendant, Sol Martinez (Martinez).

Shortly after the departure of Martinez from the Cullen room, it was discovered that the baby had been removed from the hospital premises. Members of the hospital staff contacted the Providence police. On the afternoon of April 12, Idalee Valentin (Valentin), a friend of Martinez, encountered her at an apartment on Public Street. Martinez was carrying a baby. Martinez explained that the baby was the child of her cousin, who resided in New Jersey, and that Martinez was temporarily caring for the baby. The next day Valentin saw Martinez again at the apartment occupied by the mother of Edwin Otero, Martinez's boyfriend. Ana Otero, his mother, along with Martinez and other Otero family members, were having a party to celebrate the birth of the baby, whom they thought to be Martinez's child. Valentin questioned Martinez, who now had bleached hair and no longer appeared to be pregnant. Martinez explained that she had suffered a miscarriage in New Jersey and was now planning to raise her cousin's baby as her own child.

On or about April 17, 1991, the police traced defendant's beeper to her apartment on Public Street. William Carroll, a Providence police detective, encountered Martinez outside her apartment and asked her name. She falsely identified herself as Michelle Berrios. She stated that she was a friend of Sol Martinez and further stated that Martinez had left for New York that same afternoon.

Valentin came upon the scene and was questioned by the police. After some conversation, Valentin informed the police that the person who had identified herself as Mi-

chelle Berrios was, in fact, Sol Martinez, and that she resided in apartment B1. Valentin then asked Martinez if the baby she had in her possession on April 12 was the same child who had been taken from the hospital. The defendant did not answer but wept and maintained that she was Michelle. Valentin then suggested that the police search for the baby at the Otero apartment on Hartford Avenue in Providence. The police acted pursuant to this suggestion and recovered the baby at that location. The baby was then positively identified as Macayla Rose.

The police searched defendant's apartment on Public Street and found a hospital smock or gown imprinted with the name Women and Infants Hospital. They also found Macayla Rose's hospital bracelet as well as another bracelet of the same type that bore the name Otero/Martinez. This latter bracelet had been fashioned to resemble the bracelet worn by Macayla Rose.

After the state had presented a number of witnesses who testified to the foregoing facts, defendant presented testimony from staff members of the Institute of Mental Health (IMH) who had treated her during her admission to that institution. Following her arrest, a judge of the Sixth Division District Court committed her for evaluation to the IMH and later found her to be incompetent to stand trial. She remained in that institution from April through September 1991. During this time she had been civilly committed to the IMH.

After approximately six months of treatment, Martinez was considered to have recovered her mental health sufficiently to answer the criminal charge that had been brought against her. A justice of the Superior Court for the county of Providence found that she was competent to stand trial and arraigned her on the charge of kidnapping.

The defendant offered the testimony of Dr. Spencer DeVault and Dr. Ronald Stewart. Doctor DeVault was a clinical psychologist who had given a battery of subjective and objective tests to defendant in October 1992. Doctor Ronald Stewart was a psychiatrist who had worked on a contract basis for the forensic unit of the IMH. The defense also

presented a psychiatric nurse who had attended to Martinez at that institution.

Thereafter, the state presented expert witnesses Dr. Elizabeth Simpson, a psychiatrist; Dr. Thomas Guilmette, director of neuropsychology at Rhode Island Hospital; and Dr. Eileen McNamara, a member of the Brown Medical School faculty who was presented as an expert in diagnostic psychiatry.

In essence the witnesses presented by the defense testified that Martinez was suffering from a mental illness that significantly impaired her ability to appreciate the wrongfulness of her conduct and rendered her unable to conform her actions to the requirements of the law. Among her disorders, Dr. Stewart testified to posttraumatic stress disorder, major depression with psychotic features, and/or schizo-affective disorder and possibly dissociative disorder.

The state's experts in rebuttal testified that defendant did not suffer from multiple personality disorder and that at the time of the kidnapping she did not suffer from any mental illness. Doctor Eileen McNamara stated in her opinion that defendant had been malingering or feigning her illness.

At the close of the state's medical-rebuttal testimony, defendant stipulated that the state had proven beyond a reasonable doubt that she had kidnapped Macayla Rose and stated to the court that she would rely solely on her defense of lack of criminal responsibility due to mental illness. Prior to this stipulation the state had assumed the burden of proving all elements of the crime as charged.

The jury found defendant guilty of the charge. The defendant did not file a motion for new trial but did file an appeal in this court.

In support of her appeal defendant raises ten issues. These issues will be considered in the order in which they are set forth in defendant's brief. Further facts will be furnished as may be needed in order to deal with specific issues.

I

The Competency Issue

The defendant argues that the trial justice erred in excluding evidence that a judge of

the District Court had found Martinez incompetent to stand trial and that on a subsequent occasion the Attorney General dismissed a case pursuant to Rule 48(a) of the District Court Rules of Criminal Procedure on the ground that the Attorney General considered her incompetent to testify as a witness against her boyfriend, Edwin Otero, who had been charged with raping her shortly prior to her arrest.

In support of this argument defendant asserts that the findings by the District Court and the Attorney General's department constituted judicial admissions that should have been admitted pursuant to Rules 801(d)(2)(B) and (C) and 803(8)(C) of the Rhode Island Rules of Evidence.

■ The record indicates, however, that the trial justice excluded this evidence not on hearsay grounds but on relevancy grounds. He stated clearly that he considered the standards for competency to stand trial and competency to testify as a witness as different and distinct from the standard of responsibility for criminal conduct. In so holding, the trial justice was clearly correct. The standard for lack of criminal responsibility has been set forth in the case of *State v. Johnson*, 121 R.I. 254, 267, 399 A.2d 469, 476 (1979), as follows:

> "A person is not responsible for criminal conduct if at the time of such conduct, as a result of mental disease or defect, his capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law is so substantially impaired that he cannot justly be held responsible."

Prior to the adoption of the foregoing formulation, this court had held under the former *M'Naghten* Rule that the standard for competency to stand trial is different and distinct from a test of whether an accused is criminally responsible for the commission of a crime. *State v. Page*, 104 R.I. 323, 336, 244 A.2d 258, 265 (1968). Our adoption of the rule of criminal responsibility enunciated in *State v. Johnson, supra,* does not in any way modify the distinction between these two determinations.

■ One is incompetent to stand trial if one is unable to understand the character and consequences of the proceedings and charges with which one is faced or is unable to assist properly in his or her defense. G.L. 1956 (1990 Reenactment) § 40.1–5.3–3(a)(3); *State v. Peabody*, 611 A.2d 826, 830 (R.I. 1992). One is not competent to testify as a witness if one is unable (1) to observe, (2) to recollect, (3) to communicate (a capacity to understand questions and to furnish intelligent answers), and (4) to appreciate the necessity of telling the truth. *See State v. Cabral*, 122 R.I. 623, 629, 410 A.2d 438, 442 (1980); 2 Wigmore, Evidence § 506 (Chadbourn rev. ed.1979). It can readily be seen that the standards for criminal responsibility, competency to stand trial, and competency to serve as a witness are separate and distinct. The trial justice went further and observed that even if these findings had some degree of marginal relevance under Rule 401 of the Rhode Island Rules of Evidence, he believed that introduction of such evidence "would do nothing but mislead and confuse [the jury] in what is already going to be a difficult task, namely, to determine whether this defendant should or should not be acquitted under the *Johnson* test." Thus, the trial justice exercised his discretion under both Rule 401 and Rule 403. The standard of review for such an exercise of discretion is that the trial justice will be reversed on appeal only for abuse of that discretion. *State v. Ducharme*, 601 A.2d 937, 942 (R.I.1991). Considering the different nature of these standards and the potential to mislead and confuse the jury, we conclude that the trial justice did not abuse his discretion in excluding this evidence.

It should be noted that the trial justice did permit the defense to present opinion evidence from members of the staff at the IMH, who had treated and observed defendant while she was in that institution, both prior to and subsequent to the finding of incompetency to stand trial, concerning her mental state and any symptoms that they observed relating to mental illness. It should also be noted that counsel for defendant had earlier argued that he did not seek to elicit the word "incompetent" from any witness but only to seek the witnesses' observations relating to

defendant. This type of testimony was freely admitted by the trial justice.

The trial justice did not err or abuse his discretion in excluding the evidence of findings by the District Court or the Attorney General's department concerning competency to stand trial or competency to serve as a witness in support of a criminal charge.

## II

### Evidence of Defendant's Silence

■ The defendant argues that inferences that could be drawn from the testimony of Valentin and Detective Carroll violated defendant's right to remain silent, as protected by article I, sections 10 and 13, of the Rhode Island Constitution and the Fifth and Fourteenth Amendments to the Constitution of the United States. The defendant cites *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), for the proposition that no inference may be drawn against a defendant for failing to testify at trial. This proposition is correctly stated but has no bearing on Valentin's testimony. In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the Court enunciated the doctrine that after *Miranda* warnings have been given by a police officer, the state may not present evidence of a defendant's silence. The *Doyle* rule is not applicable when a defendant's silence is in response to questions from a person who is not a police officer or otherwise acting in an official law enforcement capacity. Valentin asked certain questions of defendant. To some of these questions defendant responded by weeping. Martinez was not in custody at the time that these questions were asked, and certainly the privilege against self-incrimination in no way applies to a conversation between defendant and a friend.

■ Detective Carroll also alluded tangentially to the fact that defendant did not respond when he asked her whether the baby was inside her apartment. Significantly, counsel for defendant did not object to this testimony and, therefore, waives the right to raise this issue on appeal. *State v. Toole*, 640 A.2d 965, 972–73, 975 (R.I.1994).

■ Even if objection had been raised, the *Doyle* rule would still not apply, since no *Miranda* warnings had been given to defendant and she was not in custody. Thus pursuant to *Fletcher v. Weir*, 455 U.S. 603, 605–07, 102 S.Ct. 1309, 1311–12, 71 L.Ed.2d 490, 493–94 (1982), the admissibility of evidence concerning such silence is governed by the state's general rules of evidence. Certainly Valentin's testimony was admissible as an adoptive admission pursuant to Rule 801(d)(2)(B) of the Rhode Island Rules of Evidence. *See State v. Pacheco*, 481 A.2d 1009, 1014–15 (R.I.1984). The same rule would apply to Detective Carroll's testimony even if objection had been raised and the issue not waived. The defendant's argument in this respect is without merit.

## III

### The Theft of the Hospital Smock Elopement from IMH

The defendant argues that the introduction of evidence from Debra Gard (Gard), an employee of Women and Infants Hospital, that a nurse's smock had been stolen from the hospital constituted a violation of Rule 404(b) of the Rhode Island Rules of Evidence because it constituted a separate crime and would be unduly prejudicial to defendant.

■ The trial justice determined that this evidence was relevant, but it should be noted that defendant did not object to Gard's testimony on the ground of a violation of Rule 404(b), thus pursuant to *State v. Toole, supra*, defendant has waived the right to raise this issue on appeal.

■ Even if the issue had been raised, we have stated that under Rule 404(b) evidence of prior criminal acts are inadmissible only if that evidence is both prejudicial and irrelevant. *State v. Lemon*, 497 A.2d 713, 720–21 (R.I.1985). The fact that defendant appeared in the hospital room wearing a hospital smock that was later found in her apartment and the source of this smock was found to have been the hospital were all highly relevant elements of the state's proof that defendant was the person who had committed the kidnapping. It must be noted that although defendant stipulated at the

very end of the case to the state's having proved the kidnapping beyond a reasonable doubt, during the trial no such stipulation was given. It was therefore essential for the state to prove each element of the crime.

■ The defendant did object to this evidence on the ground that it violated Rule 16 of the Superior Court Rules of Criminal Procedure. The trial justice determined that adequate notice had been given to defendant concerning Gard's proposed testimony. Actually Gard did not and could not testify that Martinez had stolen the smock but only described where certain items were kept and their lack of availability to nonhospital employees. The prosecutor, on the basis of inferences drawn from this testimony, did suggest that the smock had been stolen. This was a fair inference to draw.

■ The defendant also objects to the introduction of evidence of Martinez's attempted elopement from the IMH. The defendant does not expand upon this issue in her brief, but the court is of the opinion that neither the evidence of the smock nor the evidence of the elopement forms any basis for the granting of a motion for mistrial. The elopement was properly held to be relevant to the issue of lack of criminal responsibility since the reasons given for her elopement were considered evidence that she may have been feigning her mental illness.

We have stated that evidence of criminal conduct may be introduced as long as it is relevant to the issues in the case. *State v. Brown*, 626 A.2d 228, 233 (R.I.1993). The trial justice did not err in admitting this evidence or in declining to grant the motion for mistrial.

## IV

### The Cautionary Instruction

■ The defendant asserts that the trial justice erred in failing to give a cautionary instruction relating to the limited use that might be made of the evidence concerning the purloined smock and the attempted elopement from the IMH. It is undisputed that no limiting or cautionary instruction was requested in accordance with Rule 105 of the

Rhode Island Rules of Evidence. Nevertheless, defendant asserts that pursuant to *State v. Jalette*, 119 R.I. 614, 627–28, 382 A.2d 526, 533–34 (1978), a limiting instruction must be given in respect to evidence relating to prior uncharged offenses.

As we pointed out in *Brown*, 626 A.2d at 234 n. 2, the *Jalette* rule is applicable to evidence of prior sexual offenses in circumstances in which a defendant is charged with a crime of sexual assault. The present case does not deal with sexual assault, and therefore, the trial justice was under no obligation to give a limiting or cautionary instruction in the absence of a request to be made by counsel for the defense. Thus the trial justice was not chargeable with error for failing to give such an instruction.

## V

### The Closing Argument

The defendant complains that the trial justice committed prejudicial error in refusing to allow counsel for defendant to argue last, since defendant bore the burden of proof on the only issue that was to be presented to the jury, namely, lack of criminal responsibility. In support of her position defendant cites *McCloud v. State*, 317 Md. 360, 564 A.2d 72 (1989), wherein the Court of Appeals of Maryland determined that a defendant had the right to make the final closing argument when the lack of criminal responsibility defense was the issue to be decided. The Court of Appeals of Maryland found that failing to give defendant this privilege was not harmless error. We are not persuaded by this opinion.

■ We agree with the states that have held that the order of argument lies within the sound discretion of the trial justice. *See, e.g., State v. Turrentine*, 152 Ariz. 61, 730 P.2d 238 (Ct.App.1986); *People v. Hendricks*, 11 Cal.App. 4th 126, 13 Cal. Rptr.2d 719 (1992); *People v. Odle*, 128 Ill.2d 111, 131 Ill.Dec. 53, 538 N.E.2d 428 (1988), *cert. denied*, 497 U.S. 1031, 110 S.Ct. 3289, 111 L.Ed.2d 798 (1990); *State v. Baker*, 120 N.H. 773, 424 A.2d 171 (1980). We believe that the order of argument in a criminal case lies within the sound discretion of the trial

justice and is subject to review only for abuse of that discretion. We do not doubt that the trial justice, in his discretion, might well have modified the order of argument on the basis of the fact that defendant had the burden of proof with respect to lack of criminal responsibility. In a related issue we have previously held that the decision concerning whether a bifurcated trial should be held rests solely within the discretion of the trial justice. *State v. Smith,* 512 A.2d 818, 822 (R.I.1986). We are of the opinion that in declining to alter the traditional order of argument between the state and defendant, the trial justice committed no abuse of discretion and did not prejudice defendant in any discernible way.

## VI

### The Testimony of Dr. Thomas Guilmette

Doctor Thomas Guilmette was presented by the state as an expert in relation to the administering and evaluation of psychological tests. This testimony was given in rebuttal to expert testimony given on behalf of defendant by Dr. Spencer DeVault, also an expert in the administration and evaluation of psychological tests.

The defendant did not furnish to the state the reports of her experts, including Dr. DeVault, until Friday, October 9, 1992, on the eve of trial. It was not until receiving this report that the state retained Dr. Guilmette. On the first day of trial (October 13, 1992), Dr. Guilmette had still not obtained the raw data upon which Dr. DeVault's opinion was based. This raw data was not furnished until October 14, 1992, when it was delivered pursuant to a court order.

On October 19, 1992, the prosecution furnished to counsel for the defense a summary of Dr. Guilmette's testimony. This summary was delivered prior to the testimony of defendant's expert witnesses.

■ Just prior to the prosecution's placing Dr. Guilmette on the stand, counsel for defendant asserted that the state's summary was inadequate and that Dr. Guilmette should be precluded from testifying pursuant to the state's violation of Rule 16(a)(7) of the Superior Court Rules of Criminal Procedure.

Rule 16(a)(7) does not require the state to do the impossible. In *State v. Sanders,* 609 A.2d 963, 965–66 (R.I.1992), we pointed out that the state has no opportunity to determine with accuracy what a rebuttal witness will say until the defendant's witness has testified.

In the case at bar the state was certainly not responsible for the late delivery of the data underlying Dr. DeVault's testimony. Doctor Guilmette was a classic rebuttal witness whose testimony could not have been predicted in advance with any degree of accuracy.

Thus the trial justice did not abuse his discretion in refusing to impose the sanction of precluding the introduction of this testimony into evidence. *See State v. Engram,* 479 A.2d 716, 718–19 (R.I.1984). The defendant's reliance upon this issue is misplaced.

## VII

### Written Reports and Dr. DeVault's Qualifications

The trial justice permitted Dr. DeVault to testify extensively concerning his psychological tests and the conclusions that he had drawn therefrom. The defendant's psychiatrist, Dr. Ronald Stewart, relied upon this report and also a police report containing a statement by defendant concerning a sexual assault allegedly committed upon her by her boyfriend, Edwin Otero.

■ The defendant sought to introduce Dr. DeVault's written report and the police report into evidence. The trial justice did not admit these written reports into evidence on the ground that the reports or the material therein contained were already in evidence as a result of Dr. Stewart's and Dr. DeVault's testimony. This ruling was an exercise of discretion by the trial justice pursuant to Rules 702 and 703 of the Rhode Island Rules of Evidence. The trial justice permitted the experts to rely upon these reports but felt that their introduction would be redundant. In so ruling, the trial justice did not abuse his discretion.

 The trial justice did not err in his ruling concerning the presentation of the qualifications of defendant's experts. The defendant was permitted to elicit all the expert qualifications of her witnesses save the one element of the type of criminal case in which Dr. DeVault had previously testified before the trial justice as a witness. The trial justice considered such testimony irrelevant and excluded it. This exclusion was not prejudicial and was certainly no abuse of discretion.

## VIII

### Reference to Defendant's Abortion

 The defendant claims to have been prejudiced by the trial justice's refusal to grant her motion in limine to exclude any evidence relating to an abortion that she had undergone when she was a teenager. Apparently defendant had experienced a number of miscarriages and had given certain inconsistent information to expert witnesses regarding her gynecological history. The state argued that the fact of the abortion was relevant to the formulation of an opinion by Dr. Eileen McNamara, a state witness, relating to the mental condition of defendant and her defense of lack of criminal responsibility. The trial justice accepted this argument and denied the motion in limine.

However, in light of his denial of the motion in limine, the trial justice permitted extensive examination of the jurors on voir dire concerning whether they might be affected by the introduction of sensitive issues that defendant might present. The defendant accepted the jurors without objection.

In the course of the trial the state introduced no evidence regarding abortion, and the only reference to abortion was contained in a medical record introduced by defendant. There is no indication that the jurors were prejudiced in any way against defendant by this peripheral reference to an abortion. In this state of our history and the prevailing mood of public opinion, it cannot be presumed that a passing reference to an abortion would in any way prejudice defendant in the minds of the jurors and certainly would not inflame their passions against her.

The trial justice did not err in determining in advance that prospective evidence might be relevant to the determination of defendant's mental state. We see no indication of prejudice that could arise because of the passing reference to an abortion.

## IX

### The Testimony of Nurse Spinelli

 In a somewhat confused context on redirect examination defendant attempted to pursue what her counsel determined to be a suggestion that Janet Spinelli, a psychiatric nurse, was of the opinion that defendant had a mental illness. An examination of the record clearly indicates that Spinelli did not purport to give any such opinion. Indeed, the nurse had testified earlier that she did not have a belief regarding whether defendant suffered from a mental illness and that it was not her function to make any such diagnosis. Consequently, the trial justice was correct in not allowing this subject to be pursued and in holding that the witness should properly be confined to testifying concerning her observations of the behavior of defendant.

## X

### The Trial Justice's Curative Instruction

Counsel for the state in closing argument made reference to defendant's failure to present additional doctors employed by the IMH to testify concerning her mental condition. This argument was probably induced by the fact that defendant's counsel had made reference to the opinions of doctors employed by the IMH other than those who were actually presented as witnesses. The defendant objected to this portion of the state's argument, and in response thereto the trial justice immediately gave a curative instruction in the following language: "Ladies and gentlemen, in a criminal case a defendant has no burden to testify herself, as I will tell you, nor does she have any burden to present evidence or witnesses. Objection sustained. Those comments shall be stricken and disregarded."

In his charge to the jury, which occurred shortly after the closing arguments, the trial justice gave the following instruction relating to this same topic:

> "Always keep in mind, as I told you some minutes ago, that the law does not compel a defendant in a criminal case to take the witness stand and testify. No presumption of guilt may be raised. No inference of any kind may be drawn from the failure of the defendant to testify. The law never imposes upon a defendant in a criminal case the burden of calling any witnesses or producing any evidence."

■■■ It should further be noted that defendant did not object to these instructions, nor did defendant move for a mistrial. The defendant now argues that the trial justice erred in declining to grant a mistrial even though no such relief was requested. A trial justice may not be faulted for having not given relief in the absence of a request that he or she do so. *State v. Rivera,* 640 A.2d 524, 526–27 (R.I.1994). This issue has not been preserved for appeal.

In this context we need not consider whether defendant on the issue of lack of criminal responsibility did bear the burden of proof and may therefore have been subject to a missing-witness argument if it were otherwise justified. However, in the case at bar the trial justice gave defendant more relief than she requested and had no obligation to grant a mistrial sua sponte.

■■■ As we know, the declaration of mistrials that are not requested can raise serious questions relating to double jeopardy, *see, e.g., United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), and should therefore be avoided by prudent trial justices. The trial justice in this case was certainly prudent in not declaring a mistrial that was never requested.

In the course of setting forth the ten principal issues on appeal, the defendant made passing reference to other issues. We have examined those issues and find that they are without merit.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment of conviction is hereby affirmed. The papers in the case may be remanded to the Superior Court.