The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
November 14, 2019

**2019COA167**

**No. 18CA0283, *People v. Payne* — Criminal Law — Trials —
Closing Arguments**

In the third issue of this opinion, a division of the court of
appeals considers whether a trial court erred by allowing a
prosecutor to waive the initial closing statement and then give a
rebuttal. Because Colorado law does not require a prosecutor to
give the initial closing statement, or necessitate that a prosecutor
waives rebuttal remarks by forgoing the initial closing, the division
concludes that a trial court does not abuse its discretion by
allowing the prosecutor to reserve her closing statement until
rebuttal absent prejudice to the defendant. Because the defendant
was not prejudiced here, the division affirms the judgment of
conviction.

Court of Appeals No. 18CA0283
Mesa County District Court No. 15CR653
Honorable Valerie J. Robison, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Cameron Scott Payne,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE FOX
J. Jones and Tow, JJ., concur

Announced November 14, 2019

Philip J. Weiser, Attorney General, Frank R. Lawson, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jessica Sommer, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Cameron Scott Payne, appeals the judgment of conviction entered on jury verdicts finding him guilty of resisting arrest, disorderly conduct, and second degree assault while lawfully confined or in custody.  Payne asserts that the trial court erred by (1) allowing lay witness testimony that usurped the jury's role; (2) failing to provide a definitional jury instruction on "lawfully confined or in custody"; (3) allowing the prosecutor to give a rebuttal closing statement after waiving initial closing remarks; and (4) tolerating prosecutorial misconduct when the prosecutor misstated the law in rebuttal closing.  Because none of Payne's contentions of error warrant reversal, we affirm the judgment of conviction.

## I.     Background

¶ 2     In May 2015, two Grand Junction police officers patrolling the downtown area heard a man screaming and cursing in the street.  When the officers approached the man, later identified as Payne, he aggressively turned toward the officers and ignored their commands to stop.  The officers placed him in handcuffs, called for backup, and were escorting Payne out of the street and toward their police car when he kicked one of the officers in the groin.  A jury found

Payne guilty of all charges except for second degree assault, bodily injury on a peace officer.[1]

## II.  Lay Witness Testimony

¶ 3    Payne contends that the trial court reversibly erred by admitting lay witness testimony that he was "lawfully confined or in custody," thereby usurping the jury's role to decide whether he was confined or in custody.  We disagree.

## A.  Additional Background

¶ 4    At trial, Officer Jason Evans testified as a lay witness for the prosecution.  In discussing Payne's arrest, the following colloquy occurred:

> [Prosecutor]: Was . . . Payne, compliant when you instructed him to stop and then had to go and put handcuffs on him?
>
> [Officer Evans]: No, ma'am.
>
> [Prosecutor]: At this point did you consider that he was lawfully confined or in custody?
>
> [Officer Evans]: At that point he was not free to leave.

---

[1] Payne was also charged with possession of drug paraphernalia, but the trial court dismissed the charge at trial because the prosecution presented no evidence to support it.

> [Prosecutor]: Did you consider that he was lawfully confined or in custody?
>
> [Officer Evans]: Yes, ma'am.

### B.     Preservation and Standard of Review

¶ 5      We review a trial court's decision to admit testimony for an abuse of discretion. *People v. Robles-Sierra*, 2018 COA 28, ¶ 23. An abuse of discretion occurs when a trial court's ruling is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law. *People v. Casias*, 2012 COA 117, ¶ 29.

¶ 6      Because Payne did not preserve this issue for appeal, we apply plain error review. *Hagos v. People*, 2012 CO 63, ¶ 14. Thus, we reverse only if any error was obvious and substantial, meaning the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Id.*

### C.     Law and Analysis

¶ 7      A testifying witness may not usurp the jury's factfinding role. *Robles-Sierra*, ¶ 24. However, CRE 704 provides that opinion testimony that is "otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." In

determining whether witness testimony usurped the function of the jury, we may consider whether (1) the witness opined that the defendant committed or likely committed the crime; (2) the testimony was clarified on cross-examination; (3) the expert's testimony usurped the trial court's function by expressing an opinion on the applicable law or legal standard; and (4) the jury was properly instructed on the law and that it could accept or reject the witness' opinion. *People v. Rector*, 248 P.3d 1196, 1203 (Colo. 2011). Payne does not challenge the third factor.

¶ 8    While the second degree assault statute, section 18-3-203(1)(f), C.R.S. 2019, does not define "lawfully confined or in custody," the terms have distinct meanings under Colorado law. *See People v. Olinger*, 39 Colo. App. 491, 493, 566 P.2d 1367, 1368 (1977) ("It is apparent that the legislature intended the word 'confined' to have a meaning different from and to be more restrictive than 'custody[.]'"). A person is confined when detained in an institution. *Id.* A person is in custody for section 18-3-203(1)(f) purposes when a police officer has "applied a level of physical control over the person being detained so as reasonably to ensure

4

that the person does not leave." *People v. Rawson,* 97 P.3d 315, 323 (Colo. App. 2004); *see also People in Interest of D.S.L.,* 134 P.3d 522, 525 (Colo. App. 2006) (To be deemed to be in custody under section 18-3-203(1)(f), "[a]ll that is required is that the 'peace officer must have applied a level of physical control over the person being detained so as reasonably to ensure that the person does not leave.'" (quoting *Rawson,* 97 P.3d at 323)); *People v. Ortega,* 899 P.2d 236, 238 (Colo. App. 1994) (concluding that a formal arrest was not required; handcuffing the defendant to a wall was sufficient to establish that he was in custody for purposes of section 18-3-203(1)(f).

¶ 9        Payne argues that Officer Evans' testimony that Payne was not free to leave and that he was "lawfully confined or in custody" improperly usurped the jury's role. He asserts that allowing the testimony constituted reversible error because the testimony expressed a legal opinion, Payne's counsel did not clarify the opinion on cross-examination, and the jury was never given a definition for "lawfully confined or in custody."

¶ 10     Although Payne's counsel cross-examined Officer Evans, he did not clarify Officer Evans' testimony that Payne was in custody after he was handcuffed. However, Officer Evans' testimony fell short of stating that Payne committed second degree assault while lawfully confined or in custody. *See Rector*, 248 P.3d at 1203. Rather, he stated that, in his opinion, Payne was not free to leave and was in custody after he was handcuffed, addressing one element of Payne's second degree assault charge. *See* CRE 704; *see also Ortega*, 899 P.2d at 238. While the jury was not given an instructional definition for "lawfully confined or in custody," that alone does not render Officer Evans' testimony improper, especially given its brevity. *See People v. Rivera*, 56 P.3d 1155, 1164 (Colo. App. 2002) (Even if a "witness opines with respect to an ultimate issue, the jury retains its authority to determine the facts from the evidence and accept or reject such opinions."). And the jurors were properly instructed that they were the "sole judges of the credibility of each witness and the weight to be given to the witness' testimony," and that they were free to "believe all of the testimony of a witness, part of it, or none of it." *See Rector*, 248 P.3d at 1203

("[T]he jury was properly instructed on the law and its ability to accept or reject" testimony.).

¶ 11    Whether Payne was in custody for purposes of committing second degree assault was a factual determination for the jury to decide. *See People v. Armstrong*, 720 P.2d 165, 169 (Colo. 1986) ("It is for the trier of fact to determine after the evidence has been presented at trial whether, under the totality of the circumstances, [the defendant] may be guilty of . . . second degree assault[.]"). Officer Evans' description of Payne's arrest was useful for the jury to determine whether Payne was in custody at the time of the charged assault.

¶ 12    Accordingly, the trial court did not abuse its discretion by allowing Officer Evans' testimony, and thus we perceive no plain error. *See Hagos*, ¶ 14; *Rector*, 248 P.3d at 1203.

### III.    Jury Instruction

¶ 13    Payne next argues that the trial court erred by failing to give a jury instruction defining "lawfully confined or in custody." We disagree.

7

## A. Additional Background

¶ 14  Before closing arguments, the trial court instructed the jury on the presumption of Payne's innocence and that the prosecution had to prove every element of each charged crime beyond a reasonable doubt. Regarding the second degree assault charge, lawfully confined or in custody, the trial court stated that the prosecution had to prove each of the following elements beyond a reasonable doubt:

> (1) that the Defendant, (2) in the state of Colorado, at or about the date and place charged, (3) knowingly and violently, (4) while lawfully confined or in custody, (5) applied physical force against the person of a peace officer engaged in the performance of his duties (6) and the Defendant knew or should have reasonably known that the victim was a peace officer engaged in the performance of his duties.[2]

¶ 15  Although the jury was provided with some definitions — for terms such as "voluntary act" and "bodily injury" — the jury was not given a definition for "lawfully confined or in custody." Payne's

---

[2] Section 18-3-203(1)(f), C.R.S. 2019, provides that an individual commits second degree assault when, while "lawfully confined or in custody, he . . . knowingly and violently applies physical force against the person of a peace officer . . . engaged in the performance of his or her duties[.]"

8

counsel had no objections or requests regarding the jury instructions.

B. Standard of Review, Preservation, and Applicable Law

¶ 16 We review de novo whether jury instructions accurately informed the jury of the relevant governing law, *People v. Carbajal*, 2014 CO 60, ¶ 10, but a trial court has substantial discretion in formulating jury instructions if "they are correct statements of the law and fairly and adequately cover the issues presented," *People v. Nerud*, 2015 COA 27, ¶ 35 (citation omitted). Thus, we review a trial court's decision to give, or not to give, a particular jury instruction for an abuse of discretion. *Day v. Johnson*, 255 P.3d 1064, 1067 (Colo. 2011).

¶ 17 The parties agree that this issue was not preserved for appeal. We therefore review for plain error. *See Hagos*, ¶ 14.

¶ 18 A definitional instruction is not required for a term or phrase familiar to a reasonable person of common intelligence, especially when the term's "meaning is not so technical or mysterious as to create confusion in jurors' minds." *People v. Thoro Prods. Co.*, 45 P.3d 737, 745 (Colo. App. 2001), *aff'd*, 70 P.3d 1188 (Colo. 2003).

9

When a jury indicates no confusion about the meaning of a statutory term, the trial court's failure to issue such a definition does not require a new trial. *People v. Esparza-Treto*, 282 P.3d 471, 480 (Colo. App. 2011).

## C. Analysis

¶ 19 Payne argues that the trial court reversibly erred by failing to instruct the jury on the meaning of "lawfully confined or in custody" because the terms have technical, specific legal meanings that the jury could not have understood without such an instruction.

¶ 20 The instructions the trial court gave matched Colorado's model criminal jury instruction for second degree assault, lawfully confined or in custody. *See* COLJI-Crim. 3-2:13 (2018); *see also People v. Rester*, 36 P.3d 98, 102 (Colo. App. 2001) ("Pattern jury instructions . . . are intended as guidelines . . . [that] carry weight and should be considered by a trial court[.]"). We agree with Payne that using model instructions does not always ensure that the trial court avoided plain error. *See Garcia v. People*, 2019 CO 64, ¶ 23 (recognizing that a jury instruction that tracked the model instruction wasn't enough to avoid plain error). But here, we

10

cannot conclude that the trial court abused its discretion by failing to *sua sponte* provide a definitional jury instruction on confinement and custody when the terms are not defined by statute and neither Payne nor the jury requested such a definitional instruction.

¶ 21     Confinement and custody, for section 18-3-203(1)(f) purposes, lack a statutory definition. *See Thoro Prods. Co.*, 45 P.3d at 745; *see also People v. Harper*, 205 P.3d 452, 456 (Colo. App. 2008) (holding that the trial court did not commit plain error by failing to define a statutory phrase, and instead instructing the jury to refer to the term's common meaning after the jury requested a definition, because there was "no special statutory definition" of the phrase). In fact, Colorado's model criminal jury instructions note that because custody and confinement have no statutory definition, a trial court retains its discretion to draft a supplemental definitional instruction. *See* COLJI-Crim. 3-2:13 cmt. 3 ("[A] court exercising its discretion to draft a supplemental definitional instruction should refer to precedent, which makes clear that the phrase 'while lawfully confined or in custody' encompasses confinements that occur in facilities, as well as custodial situations that take place in

11

the field."); *see also People v. Marquez-Lopez*, 952 P.2d 788, 789-90 (Colo. App. 1997) (rejecting defendant's contention that section 18-3-203(1)(f) could not apply to him "because he was neither confined in an institution nor placed under arrest for a crime prior to the assault"). Moreover, the jury never expressed confusion about the meanings of confinement or custody. *See Esparza-Treto*, 282 P.3d at 480; *cf. People v. Atkins*, 885 P.2d 243, 245 (Colo. App. 1994) (holding that the trial court abused its discretion by failing to define custody and confinement, as used in section 18-8-208, C.R.S. 2019, the escape statute, after the jury requested a definition, because the terms have specific meanings, but concluding that its failure to provide the requested instruction was not plain error). *But see People v. Thornton*, 929 P.2d 729, 734 (Colo. 1996) (disapproving of *Atkins'* holding that the definition of "custody" from section 16-1-104(9), C.R.S. 2019, also defines "custody" as used in the escape statute).

¶ 22    From the evidence presented and the instructions given at trial, the jury was aware that whether Payne was in custody was a key element the prosecution had to prove. The jury was told the

12

necessary elements that the prosecution was required to prove beyond a reasonable doubt. *See People v. Hayward*, 55 P.3d 803, 805 (Colo. App. 2002) ("Jury instructions framed in the language of statutes are generally adequate and proper."); *see also People v. Reed*, 2013 COA 113, ¶ 28 ("We presume the jury followed the court's instructions."). And the jurors were instructed that they were free to believe or disregard witness testimony, because whether Payne was "lawfully confined or in custody" was a fact issue for their determination. *See Armstrong*, 720 P.2d at 169; *see also Day*, 255 P.3d at 1072 ("It is unnecessary to give an instruction that is encompassed in other instructions given by the court." (quoting *People v. Phillips*, 91 P.3d 476, 483 (Colo. App. 2004))); *Harper*, 205 P.3d at 456 (recognizing that a trial court should not give additional instructions for "factual matters that the jury alone could resolve").

¶ 23    Thus, we conclude that the trial court did not abuse its discretion when it did not offer, *sua sponte*, a supplemental definitional instruction for "lawfully confined or in custody." *See Day*, 255 P.3d at 1067.

## IV. Rebuttal Closing

¶ 24     Payne next argues that the trial court reversibly erred by allowing the prosecution to waive its initial closing statement and then give a rebuttal closing argument. We disagree.

### A. Additional Background

¶ 25     After the trial court instructed the jury, the prosecutor informed the trial court that she would reserve her closing argument time for rebuttal. Payne's counsel did not object and gave his closing statement, arguing that Payne was innocent of the two second degree assault charges because (1) he was unable to form the required intent for second degree assault, bodily injury on a peace officer, as he was intoxicated; and (2) he was neither confined nor in custody when he kicked Officer Evans. Regarding the second degree assault charge, lawfully confined or in custody, Payne's counsel argued that Payne was not confined because he was not in jail. And while Payne was in handcuffs, his counsel argued that Payne was not yet in custody because multiple officers were needed to complete the arrest before he bent down and kicked Officer Evans.

¶ 26    In her rebuttal closing statement, the prosecutor reminded the jury that "neither what [Payne's counsel] nor I say right now is ultimately evidence.  You decide what the evidence in this case has shown."

## B.    Standard of Review and Preservation

¶ 27    Trial courts are afforded broad discretion over the presentation of closing arguments and in determining whether closing arguments are improper.  *People v. Brown*, 218 P.3d 733, 740 (Colo. App. 2009), *aff'd*, 239 P.3d 764 (Colo. 2010); *see also People v. Motley*, 179 Colo. 77, 79, 498 P.2d 339, 340 (1972) ("It is fundamental in Colorado that the scope of final argument rests in the sound discretion of the trial court.").  "A trial court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if it misconstrues or misapplies the law." *People v. Bohl*, 2018 COA 152, ¶ 16.  However, we review de novo whether the trial court misapplied the law, *People v. Jimenez*, 217 P.3d 841, 859 (Colo. App. 2008), by allowing the prosecution to give a rebuttal closing argument after waiving initial closing.

15

¶ 28    Where defense counsel failed to object at trial, as here, we review for plain error.  *See Hagos*, ¶ 14.

### C.    Analysis

¶ 29    Payne asserts that because his counsel was forced to give his closing statement first and was thus unable to respond to the prosecutor's closing remarks, his constitutional right to a fair trial and to present a complete defense was violated.  We disagree.

¶ 30    First, whether the trial court erred here — by allowing the prosecutor to delay her closing statement until rebuttal — did not implicate Payne's constitutional right to a fair trial.[3]  *See People v. Flockhart*, 2013 CO 42, ¶ 20 ("Only those errors 'that specifically and directly offend a defendant's constitutional rights are "constitutional" in nature.'") (citations omitted); *People v. Davis*, 280 P.3d 51, 53 (Colo. App. 2011) (observing that closing argument "is broadly accepted as being subject to the discretion of the trial court,

---

[3] Further, because closing statements are not evidence, but merely allow counsel to highlight the significance of evidence, we also reject Payne's suggestion that the order of closing arguments affected his right to present a defense.  *See People v. Rhea*, 2014 COA 60, ¶ 68 (recognizing that closing argument is not evidence).

and does not rise to the level of constitutional error") (citation omitted).

¶ 31     Second, Colorado procedure does not dictate a specific order for closing arguments. Crim. P. 30 requires that a trial court instruct the jury before closing arguments to allow counsel to comment on instructions during closing but is silent regarding the order for closing arguments. *See also People v. Bastin*, 937 P.2d 761, 764 (Colo. App. 1996). And we will not read requirements into our procedural rules that are not there. *See People v. Greer*, 262 P.3d 920, 930 (Colo. App. 2011) ("[W]e are not free to depart from the plain language of a supreme court rule."); *see also Humane Soc'y of Pikes Peak Region v. Indus. Claim Appeals Office*, 26 P.3d 546, 549 (Colo. App. 2001) ("[W]e may not read a nonexistent provision into the statute."). Because the trial court could not have violated a nonexistent rule, it could not have misapplied the law in allowing the prosecutor to conduct rebuttal closing after she waived initial closing. Our conclusion is consistent with the broad discretion trial courts are afforded in presiding over closing

argument.  *See Motley*, 179 Colo. at 79, 498 P.2d at 340; *Brown*, 218 P.3d at 740.

¶ 32    While Payne relies on Fed. R. Crim. P. 29.1 — which dictates the order of closing arguments as follows: the government argues, then the defense, and then the government rebuts — Colorado has not adopted any similar rule.[4]  And, even where the rule applies, a defendant's right to not give the initial closing statement under Fed. R. Crim. P. 29.1 has not been interpreted as a constitutional right. *See, e.g., United States v. Cugno*, 255 F. App'x 5, 12 (5th Cir. 2007) (recognizing that "allowing the government to save its core arguments for rebuttal may constitute an abuse of discretion" and looking to whether the defendant could demonstrate prejudice); *see also Warren v. State*, 636 S.E.2d 671, 673 (Ga. Ct. App. 2006) ("As

---

[4] Fed. R. Crim. P. 29.1 is silent on whether a prosecutor waives rebuttal closing if she waives her initial closing statement.  Payne relies on Fed. R. Crim. P. 29.1's advisory committee notes, which state that the "Committee is of the view that the prosecutor, when he waives his initial closing argument, also waives his rebuttal" because the "fair and effective administration of justice is best served if the defendant knows the arguments actually made by the prosecution . . . before the defendant is faced with . . . what to reply."  Fed. R. Crim. P. 29.1 advisory committee's note B to 1975 enactment.

18

construed by the federal courts, Rule 29.1 'does not establish a constitutional doctrine[.]'") (citation omitted).

¶ 33     Because the order of closing remarks does not implicate Payne's constitutional rights, and Colorado has not adopted a rule like Fed. R. Crim. P. 29.1, federal precedent is not particularly useful here.[5]  *See Warne v. Hall*, 2016 CO 50, ¶ 17 ("[S]tate courts are generally free to adopt procedural rules different from those governing federal proceedings[.]"); *cf. People v. Spykstra*, 234 P.3d 662, 666 (Colo. 2010) (recognizing that federal court decisions are not controlling when interpreting Colorado procedural rules, but noting that federal case law was helpful in interpreting Colorado Crim. P. 15(a) as Colorado's rule was "patterned after the federal rule").

¶ 34     While our supreme court is free to adopt a rule similar to Fed. R. Crim. P. 29.1, it has not done so.[6]  *See Strudley v. Antero Res.*

---

[5] To the extent Payne relies on foreign precedent from states that have adopted a rule similar to Fed. R. Crim. P. 29.1, such case law is also inapplicable here.

[6] When Colorado's criminal rules were first adopted in 1961, they often paralleled the federal rules, with some deviations.  *See Civil Rules Committee and the Rules of Criminal Procedure Committee*, 33

*Corp.*, 2013 COA 106, ¶ 34 (recognizing that if our supreme court had "intended to adopt a standard similar to that in the federal rules, it could have done so by patterning C.R.C.P. 16 after the federal rule"), *aff'd*, 2015 CO 26.  Thus, we reject Payne's argument that the prosecutor waived her right to rebuttal closing when she declined to give the initial closing statement.  *See People v. Rediger*, 2018 CO 32, ¶ 39 (Waiver "is 'the intentional relinquishment of a known right or privilege,'" and we "indulge every reasonable presumption against waiver.") (citations omitted).

¶ 35     We next address whether a trial court abuses its discretion by allowing a prosecutor to raise new arguments during rebuttal.  *See Motley*, 179 Colo. at 79, 498 P.2d at 340; *Brown*, 218 P.3d at 740.  Our supreme court has not, by procedural rules or precedent, explicitly required prosecutors to limit their rebuttal closing statements to issues that they addressed in their initial closing

Colo. Law. 75, 77 (Aug. 2004).  However, the passage, deletion, or modification of a federal criminal rule may, but will not necessarily, trigger a rule change in Colorado.  *Id.*  Fed. R. Crim. P. 29.1 was added in 1974 and became effective December 1, 1975.  *See* 2A Charles Alan Wright et al., *Federal Practice & Procedure* § 476, Westlaw (4th ed. database updated Aug. 2019).

statements or that the defendant's counsel addressed in closing. *See People v. Allgier*, 2018 COA 122, ¶ 52 ("Prosecutors also have considerable latitude in replying to opposing counsel's arguments and in making arguments based on facts in evidence and reasonable inferences that can be drawn from those facts."). *But see People v. Gilmore*, 97 P.3d 123, 131 (Colo. App. 2003) (holding that the prosecutor's rebuttal closing statement did not constitute plain error where the comments "were in response to the defense challenge to the quality of the police investigation").

¶ 36 Whether a trial court abuses its discretion by allowing a prosecutor to raise new arguments during rebuttal — new in the sense that the prosecutor did not give the initial closing statement or that the prosecutor's rebuttal addressed issues not raised by defendant's counsel in closing — appears to be a matter of first impression for our court. Accordingly, we look to other jurisdictions without a rule similar to Fed. R. Crim. P. 29.1 for guidance. *See People v. Rail*, 2016 COA 24, ¶ 22 (*cert. granted* Apr. 10, 2017); *see also Lewis v. State*, 657 S.E.2d 854, 857 (Ga. 2008) (declining to

21

adopt the federal practice and ruling that trial courts may allow the prosecution to waive its initial closing).

¶ 37    Some of these jurisdictions have rejected the notion that a trial court inherently errs by allowing the prosecution to reserve its closing statement until rebuttal. *See Commonwealth v. Seminara*, 483 N.E.2d 92, 99 (Mass. App. Ct. 1985) ("That the drafters of the Federal Rules of Criminal Procedure have endorsed a different order of argument does not . . . compel the Massachusetts courts to do the same. . . .  If defense counsel hears prejudicial error in the prosecutor's closing, there is an opportunity to object, request curative instructions, or move for a mistrial."); *Margraves v. State*, 56 S.W.3d 673, 684 (Tex. App. 2001) (rejecting defendant's contention that the trial court erred in allowing the State to reserve its entire closing argument for rebuttal and noting that if "the legislature intended the State to be required to open the closing arguments, it could have easily indicated that intention [in the Texas Code of Criminal Procedure]"); *see also Porter v. United States*, 826 A.2d 398, 409 (D.C. 2003) (recognizing that while the prosecutor should not develop new arguments on rebuttal, it "is not

an inflexible rule, leaving to the trial court to determine, in its discretion, how far the rebuttal may extend"); *State v. Martinez*, 651 A.2d 1189, 1195-96 (R.I. 1994) ("[T]he order of argument in a criminal case lies within the sound discretion of the trial justice and is subject to review only for abuse of that discretion.").

¶ 38    Other jurisdictions often look to whether a defendant was prejudiced.  *See Bailey v. State*, 440 A.2d 997, 1001 (Del. 1982) (holding that the trial court abused its discretion in allowing the prosecution, during its rebuttal, to discuss testimony not mentioned by the defense or by the prosecution in its opening closing statement); *Presi v. State*, 534 A.2d 370, 371 (Md. Ct. Spec. App. 1987) (holding that the trial court abused its discretion in allowing the prosecution to raise a new issue in its rebuttal because the defendant was prejudiced by having no "opportunity to rebut the State's new argument"); *State v. Hughes*, 796 S.E.2d 174, 181 (S.C. Ct. App. 2017) (holding that the defendant failed to demonstrate prejudicial error, where the trial court allowed the prosecutor to delay most of his closing remarks until rebuttal, because the prosecutor's rebuttal closing "was confined to content

that had already been raised in Hughes's closing argument").  Given that trial courts enjoy broad discretion concerning the scope of final argument, *see Motley*, 179 Colo. at 79, 498 P.2d at 340, it is equally reasonable to vest trial courts with discretion over the order of final argument, *see Martinez*, 651 A.2d at 1195-96.

¶ 39    We adopt the prejudice approach and conclude that because Colorado law does not require the prosecutor to give the initial closing statement, and a prosecutor does not waive rebuttal remarks by forgoing the initial closing, a trial court abuses its discretion by allowing the prosecutor to reserve her closing statement until rebuttal only when the prosecutor's rebuttal remarks prejudice the defendant, and the court fails to remedy such prejudice, such as by striking the argument or allowing surrebuttal by the defense.  We perceive no such prejudice here.

¶ 40    During the prosecutor's rebuttal statement, she responded only to Payne's counsel's closing arguments.  Specifically, her statements disputed Payne's counsel's argument that Payne was not confined or in custody.  Further, the prosecutor's rebuttal remarks were tied to evidence admitted during trial or to reasonable

inferences from admitted evidence. *See Martinez v. People*, 244 P.3d 135, 142 (Colo. 2010) ("[W]e do not require prosecutors to follow a rigid or formulaic method when referencing evidence in the record. The prosecutor must nonetheless make some reference to evidence [admitted at trial.]"). Accordingly, although Payne's counsel was unable to respond to the prosecutor's closing remarks, Payne was not prejudiced by them. *See Bailey*, 440 A.2d at 1001; *Presi*, 534 A.2d at 371; *Hughes*, 796 S.E.2d at 181; *see also Motley*, 179 Colo. at 79, 498 P.2d at 340. If Payne's counsel believed the prosecutor's rebuttal argument exceeded the scope of defense's closing, he could have objected, requested surrebuttal, requested a curative instruction, or moved for a mistrial.[7] *See Cugno*, 255 F. App'x at 12; *Seminara*, 483 N.E.2d at 99. Moreover, we cannot say that the prosecutor's rebuttal statement impermissibly shifted the burden of

---

[7] Of course, in making the tactical decision to waive initial closing, the prosecutor risks the possibility that a defendant may also waive closing. *See, e.g.*, *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (acknowledging that "it might sometimes make sense [for defense counsel] to forgo closing argument altogether"); *Moore v. Reynolds*, 153 F.3d 1086, 1104 (10th Cir. 1998) (concluding that defense counsel was not ineffective by waiving closing argument because it "was the product of a strategic decision . . . designed to prevent the district attorney from giving a second summation").

proof to Payne where (1) the prosecutor's rebuttal remarks did not exceed the scope of Payne's counsel's closing argument, and (2) the prosecutor reminded the jury that closing statements are not evidence.

¶ 41     For the same reasons — that the prosecutor's rebuttal remarks did not exceed the scope of Payne's counsel's closing remarks and the prosecutor properly reminded the jury that closing arguments did not constitute evidence, *see People v. Trujillo*, 2018 COA 12, ¶ 40 — and because Payne's counsel failed to object to the prosecution reserving its closing statement until rebuttal, *see People v. Lovato*, 2014 COA 113, ¶ 65, we conclude that Payne was not prejudiced, *see Bailey*, 440 A.2d at 1001; *Presi*, 534 A.2d at 371; *Hughes*, 796 S.E.2d at 181.  Therefore, under the facts of this case, the trial court did not abuse its discretion by allowing the prosecutor to reserve her closing statement until rebuttal.  *See Bohl*, ¶ 16; *People v. Krueger*, 2012 COA 80, ¶ 51.

## V. Prosecutorial Misconduct

¶ 42     Payne last argues that the trial court reversibly erred by allowing the prosecutor to misstate the custody and confinement law during closing. We disagree.

### A. Additional Background

¶ 43     Regarding whether Payne was confined or in custody, the prosecutor stated,

> What does your reason and common sense tell you about custody or confinement. . . . [Y]ou see someone being approached on the street. That person is told by law enforcement, "Police, stop." They . . . are handcuffed, detained, not free to leave, as the officer testified, an officer on each hand and they're being walked to sit down while they're giving identifying information about themselves. Handcuffed, ordered to stop, two police officers hands on with them. I would argue to you your reason and common sense is fairly clear. That person is clearly in custody or confinement. Now [Payne's counsel] would ask you to believe that confinement must refer to only someone who was in a detention facility. That's not in the jury instructions. That's not the law the judge has given to you. Custody or confinement means what your reason and common sense tells you those words mean.

## B. Standard of Review and Preservation

¶ 44    Our review of a prosecutorial misconduct claim involves a two-step analysis.  First, we determine whether the prosecutor's conduct was improper based on the totality of the circumstances; second, we determine whether the conduct warrants reversal under the proper standard of review.  *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010).

¶ 45    "We review the district court's determination whether a prosecutor engaged in misconduct for an abuse of discretion.  We will not disturb the court's ruling absent a showing of a gross abuse of discretion resulting in prejudice and a denial of justice."  *Krueger*, ¶ 51 (citations omitted).  Where defense counsel failed to object at trial, as here, we review for plain error.  *See Hagos*, ¶ 14.  "To constitute plain error, prosecutorial misconduct must be flagrant or glaringly or tremendously improper, and it must so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction."  *People v. McMinn*, 2013 COA 94, ¶ 58.

## C.     Applicable Law

¶ 46     We evaluate claims of improper argument in the context of the argument as a whole and in light of the evidence before the jury. *People v. Conyac*, 2014 COA 8M, ¶ 132.  During closing remarks, prosecutors have wide latitude in the language and style they choose to employ.  *Domingo-Gomez v. People*, 125 P.3d 1043, 1048 (Colo. 2005).  Additionally, "because arguments delivered in the heat of trial are not always perfectly scripted, reviewing courts accord prosecutors the benefit of the doubt when their remarks are ambiguous or simply inartful." *People v. Samson*, 2012 COA 167, ¶ 30.  However, a prosecutor may not misstate the evidence or the law.  *People v. Robles*, 302 P.3d 269, 279 (Colo. App. 2011), *aff'd*, 2013 CO 24.

¶ 47     In determining whether a closing argument was improper, we may consider the language used, the context of the statements, the strength of the evidence, and whether the prosecutor repeated the misconduct.  *Lovato*, ¶ 64; *see also Trujillo*, ¶ 40 (A "reviewing court may consider whether proper jury instructions mitigated the prejudicial effect of prosecutorial misconduct.").  Defense counsel's

29

failure to object is also a factor that we may consider when examining the impact of a prosecutor's argument, as it may "demonstrate defense counsel's belief that the live argument, despite its appearance in a cold record, was not overly damaging." *Lovato*, ¶ 65 (quoting *People v. Wallace*, 97 P.3d 262, 269 (Colo. App. 2004)).

## D.    Analysis

¶ 48    Payne asserts that the prosecutor's rebuttal statement misstated the law, lowered the burden of proof, and misled the jury by implying that Payne's counsel wrongly stated that confinement refers only to someone in a detention facility and that confinement and custody have a broader meaning rather than a specific, legal definition.  We disagree.

¶ 49    When viewed in context, the prosecutor's remarks did not constitute plain error.  Although the prosecutor wrongly suggested that confinement was not limited to someone in a detention facility, the jury could properly find Payne guilty of second degree assault if it found confinement *or* custody.  *See Marquez-Lopez*, 952 P.2d at 789-90 (rejecting defendant's contention that section 18-3-203(1)(f)

could not apply to him "because he was neither confined in an institution nor placed under arrest for a crime prior to the assault"); *see also Ortega*, 899 P.2d at 238. And while divisions of this court have interpreted custody to mean some exercise of physical control to reasonably ensure that a person is unable to leave, the prosecutor's statement that custody means "what your reason and common sense tells you" merely invited the jury to decide whether, here, the level of control applied to Payne amounted to custody. *See Armstrong*, 720 P.2d at 169. Thus, while the prosecutor's statement regarding confinement may have been ambiguous or inartful, *see Samson*, ¶ 30, we cannot conclude that the prosecutor misstated the law regarding second degree assault, lawfully confined or in custody. Nor can we conclude that the prosecutor lowered the burden of proof given that the jury was properly instructed that the prosecutor's closing statement did not constitute evidence and was instructed that the prosecution had to prove every element beyond a reasonable doubt. *See Trujillo*, ¶ 40.

¶ 50    Ultimately, given that (1) the prosecutor's confinement statement was brief, *see Lovato*, ¶ 64; (2) Payne's counsel did not

31

object, *see Trujillo,* ¶ 65; and (3) the prosecutor had wide latitude to respond to Payne's counsel's arguments that Payne was not "lawfully confined or in custody," *see Domingo-Gomez,* 125 P.3d at 1048, we conclude that allowing the prosecutor's statements did not constitute plain error, *see id.* at 1053; *McMinn,* ¶ 58.

## VI.   Conclusion

¶ 51    We affirm the judgment of conviction.

JUDGE J. JONES and JUDGE TOW concur.